UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KAREN WILLIAMS, individually
and on behalf of all others
similarly situated,

       Plaintiff,

                         NO. CIV. S-12-1907 LKK/EFB

    v.

U.S. BANK NATIONAL ASSOCIATION
and DOES 1-50, inclusive,             O R D E R

       Defendants.
_____/

    Plaintiff seeks conditional certification of a class of current and former mortgage underwriters employed by defendant U.S. Bank. Defendant has requested that the court seal every single page of most of the substantive exhibits that plaintiff has submitted in support of the conditional certification motion.[1] For the reasons that follow, plaintiff's conditional certification

_____

    [1] To its credit, defendant has not requested the sealing of its Form 10-K, a public document, nor the mortgage underwriter job description. Nor has it requested the sealing of procedural documents (proposed notice forms, postcard and envelope), and materials taken from public websites.

1

1  motion will be granted, and defendant's request to seal will be

2  denied for the most part, and granted in part.

3  **I.   BACKGROUND**

4       Plaintiff Karen Williams is a former mortgage underwriter for

5  defendant U.S. Bank ("the bank").  Plaintiff alleges that the Bank

6  "suffered and permitted" Williams to work overtime hours.

7  Complaint (ECF No. 1) ¶ 9.   However, the bank did not pay her

8  overtime wages, even though, Williams alleges, the Fair Labor

9  Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., required the

10  bank to do so.   Id.

11       The FLSA generally requires an employer to pay overtime wages

12  for employees working more than 40 hours in a week.   29 U.S.C.

13  § 207.  The overtime provisions do not apply however, to "exempt"

14  employees, including "any employee employed in a bona fide ...

15  administrative ... capacity."  29 U.S.C. § 213(a)(1).   In this

16  case, defendant classified plaintiff as exempt pursuant to the

17  "administrative employee" exemption.  See Defendant's Opposition

18  to Conditional Certification ("Opposition") (ECF No. 33) at 6.[2]

19       Plaintiff seeks to represent a nationwide class of U.S. Bank

20  mortgage underwriters, and moves here for conditional certification

21  of the class pursuant to 29 U.S.C. § 216.  Plaintiff asserts that

22  the proposed class members were together the victims of a single

23  policy of defendant's, namely, that although mortgage underwriters

24  were all entitled to overtime wages for overtime work, defendant

25  _____

26       [2] The page numbers refer to the CMF/ECF page numbers, not the
internal document page numbers.

1 uniformly mis-classified them as "exempt" so as to deny them the

2 overtime wages they were owed.  <u>See</u> <u>See</u> Memorandum in Support of

3 Motion For Conditional Certification and Judicial Notice ("Motion")

4 (ECF No. 28) at 7.  Plaintiff claims that the mortgage underwriters

5 performed the same job duties; were uniformly classified (or mis-

6 classified), as administrative employees who were "exempt" from the

7 overtime compensation laws; were paid in a similar manner; and

8 commonly worked overtime hours without receiving overtime wages.

9 <u>See</u> Motion at 6.

10     Defendant opposes the motion on the grounds that there are

11 conflicting declarations from the underwriters themselves – those

12 submitted by plaintiffs versus those submitted by defendant – about

13 what their job duties are, what authority they have to approve or

14 deny loans, and what is the basis for evaluating their job

15 performance.  <u>See</u> Defendant's Mem. of Points and Authorities in

16 Opposition (ECF No. 33) ("Opposition") at 10-12.  Defendant also

17 seeks to exclude plaintiff's own declaration on the ground that it

18 is "contrary to her deposition testimony," and therefore,

19 "inherently unreliable." <u>See</u> Opposition at 9-10.

20 **II. STANDARDS**

21        **A.    Sealing Documents**

22        Courts have long recognized a "general right to inspect

23 and copy public records and documents, including judicial records

24 and documents." <u>Nixon v. Warner Commc'ns, Inc.</u>, 435 U.S. 589, 597

25 (1978) (denying release of the "Nixon tapes" that were played in

26 open court and entered into evidence).  "This right extends to

1  pretrial documents filed in civil cases." <u>Estate of Migliaccio v.</u>

2  <u>Allianz Life Ins. Co. (In re Midlan Nat'l Life Ins. Co. Annuity</u>

3  <u>Sales Practices Lit.)</u>, 686 F.3d 1115, 1119 (9th Cir. 2012) (<u>per</u>

4  <u>curiam</u>).  "Unless a particular court record is one 'traditionally

5  kept secret,' a 'strong presumption in favor of access' is the

6  starting point." <u>Kamakana v. City and Cnty. of Honolulu</u>, 447 F.3d

7  1172, 1178 (9th Cir. 2006) (quoting <u>Foltz v. State Farm Mut. Auto.</u>

8  <u>Ins. Co.</u>, 331 F.3d 1122, 1135 (9th Cir. 2003)).[3]  In order to

9  overcome this strong presumption, a party seeking to seal a

10 judicial record must articulate justifications for sealing that

11 outweigh the historical right of access and the public policies

12 favoring disclosure. <u>See</u> <u>id.</u> at 1178–79.

13     The Ninth Circuit has determined that the public's interest

14 in non-dispositive motions is relatively lower than its interest

15 in trial or a dispositive motion.  Accordingly, a party seeking to

16 seal a document attached to a non-dispositive motion need only

17 demonstrate "good cause" to justify sealing. <u>Pintos v. Pac.</u>

18 <u>Creditors Ass'n</u>, 605 F.3d 665, 678 (9th Cir. 2010) (applying "good

19 cause" standard to all non-dispositive motions because such motions

20 "are often unrelated, or only tangentially related, to the

21 underlying cause of action") (internal quotation marks and citation

22 _____

23     [3]  Materials traditionally kept secret include grand jury
   transcripts. <u>See</u> <u>Times Mirror Co. v. U.S.</u>, 873 F.2d 1210, 1213 (9th
24 Cir. 1989) ("Traditionally, for example, grand jury proceedings
   have been kept secret even though they are judicial proceedings
25 which are closely related to the criminal fact-finding process")
   (rejecting press access to search warrant materials in an on-going
26 criminal investigation).

1  omitted), <u>cert. denied</u>, 562 U.S. ___, 131 S. Ct. 900 (2011).  "The

2  party seeking protection bears the burden of showing specific

3  prejudice or harm will result if no [protection] is granted."

4  <u>Phillips v. Gen. Motors Corp.</u>, 307 F.3d 1206, 1210–11 (9th Cir.

5  2002).  That party must make a "<u>particularized showing</u> of good

6  cause with respect to any individual document."  <u>San Jose Mercury</u>

7  <u>News, Inc. v. U.S. Dist. Court, N. Dist. (San Jose)</u>, 187 F.3d 1096,

8  1103 (9th Cir. 1999) (emphasis added).  "Broad allegations of harm,

9  unsubstantiated by specific examples or articulated reasoning" are

10  insufficient. <u>Beckman Indus., Inc. v. Int'l Ins. Co.</u>, 966 F.2d 470,

11  476 (9th Cir.) (quoting <u>Cipollone v. Liggett Group, Inc.</u>, 785 F.2d

12  1108, 1121 (3rd Cir. 1986)), <u>cert. denied</u>, 506 U.S. 868 (1992).

13      Conversely, "the resolution of a dispute on the merits,

14  whether by trial or summary judgment, is at the heart of the

15  interest in ensuring the 'public's understanding of the judicial

16  process and of significant public events.'" <u>Kamakana</u>, 447 F.3d at

17  1179 (quoting <u>Valley Broad. Co. v. U.S. Dist. Court for Dist. of</u>

18  <u>Nev.</u>, 798 F.2d 1289, 1294 (9th Cir. 1986)). Accordingly, a party

19  seeking to seal a judicial record attached to a dispositive motion

20  or one that is presented at trial must articulate "compelling

21  reasons" in favor of sealing. <u>See id.</u> at 1178. "The mere fact that

22  the production of records may lead to a litigant's embarrassment,

23  incrimination, or exposure to further litigation will not, without

24  more, compel the court to seal its records." <u>Id.</u> at 1179 (citing

25  <u>Foltz</u>, 331 F.3d at 1136). "In general, 'compelling reasons' . . .

26  exist when such 'court files might have become a vehicle for

1   improper purposes,' such as the use of records to gratify private

2   spite, promote public scandal, circulate libelous statements, or

3   release trade secrets." Id. (citing Nixon, 435 U.S. at 598).

4        Under the "compelling reasons" standard, a district court must

5   weigh "relevant factors," base its decision "on a compelling

6   reason," and "articulate the factual basis for its ruling, without

7   relying on hypothesis or conjecture." Pintos, 605 F.3d at 679

8   (quoting Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir.

9   1995)). "[S]ources of business information that might harm a

10  litigant's competitive standing" often warrant protection under

11  seal. Nixon, 435 U.S. at 598.

12       **B.   Conditional Certification.**

13       The FLSA allows a "collective action" to be brought on behalf

14  of "similarly situated" employees.   29 U.S.C. § 216(b); Kress v.

15  PwC, 263 F.R.D. 623, 627 (E.D. Cal. 2009) (Karlton, J.).   The

16  determination of whether prospective class members are similarly

17  situated is not made under the analysis required for Fed. R. Civ.

18  P. 23 class actions.   Kress, 263 F.R.D. at 627.[4]   Rather, the

19  courts generally apply a two-tiered approach.   Kress, 263 F.R.D.

20  at 627.[5]

---

22  [4] Accord, McElmurry v. U.S. Bank Nat'l Ass'n, 495 F.3d 1136,
    1139 (9th Cir. 2007) (noting that Section 216(b) notice "has less
    to do with the due process rights of the potential plaintiffs").

24  [5] There appears to be no definitive guidance on the use of the
    two-tiered approach from the Supreme Court or Ninth Circuit.
    However, this court has adopted the two-tiered approach, as have
25  Courts of Appeals across the country.   See Kress, 263 F.R.D. at
    627; Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3rd
26  Cir. 2012) (The "two-tier approach, while nowhere mandated, ...

1   Under the two tiered approach, the first tier is the "notice

2   stage," which asks whether the employees are sufficiently

3   "similarly situated" that notice should be sent to prospective

4   plaintiffs under Hoffmann-La Roche v. Sperling, 493 U.S. 165

5   (1989). Kress, 263 F.R.D. at 627. It is plaintiff's burden to

6   show that the class should be conditionally certified. See id.

7   Plaintiff meets her burden by providing substantial allegations,

8   supported by declarations or discovery, that the putative class

9   members were together the victims of a single decision, policy, or

10   plan.[6]  Id.  In determining whether plaintiff has carried her

---

appears to have garnered wide acceptance. We implicitly embraced
this two-step approach, and we affirm its use here"); Sandoz v.
Cingular Wireless LLC, 553 F.3d 913, 916 (5th Cir. 2008) ("More
specifically, collective actions typically proceed in two stages.
First, the plaintiff moves for conditional certification of his or
her collective action. The district court then decides, usually
based on the pleadings and affidavits of the parties, whether to
provide notice to fellow employees who may be similarly situated
to the named plaintiff, thereby conditionally certifying a
collective action. Second, once discovery is complete and the
employer moves to decertify the collective action, the court must
make a factual determination as to whether there are
similarly-situated employees who have opted in. If so, the
collective action may proceed, and if not, the court must dismiss
the opt-in employees, leaving only the named plaintiff's original
claims") (citations omitted); White v. Baptist Memorial Health Care
Corp., 699 F.3d 869, 877 (6th Cir. 2012) ("District courts
determine whether plaintiffs are similarly situated in a two-step
process, the first at the beginning of discovery and the second
after all class plaintiffs have decided whether to opt-in and
discovery has concluded"); Thiessen v. General Electric Capital
Corp., 267 F.3d 1095, 1105 (10th Cir. 2001) ("We find no error on
the part of the district court in adopting the ad hoc approach")
cert. denied, 536 U.S. 934 (2002). Morgan v. Family Dollar Stores,
Inc., 551 F.3d 1233, 1260-61 (11th Cir. 2008), cert. denied, 558
U.S. 816 (2009).

[6] Although plaintiff has the burden here of showing that she
and the other mortgage underwriters were the victims of a single
decision, policy or plan, the court keeps in mind that it is the

7

1   burden,   the   court   need   not   consider   evidence   provided   by

2   defendants.   Id., at 628.   The determination is made based on a

3   fairly lenient standard.[7]   Id.

4       To make her showing, plaintiff must provide some allegations

5   or evidence "indicating that prospective class members share

6   similar job duties."   Id., at 630.   Accordingly, whether the

7   mortgage underwriters are "substantially similar" must be evaluated

8   in light of the issues raised by plaintiff's particular FLSA claim.

9   In this case, as noted, plaintiff's claim is that defendant has

10  mis-classified the mortgage underwriters as "exempt" administrative

11  employees.[8]   Accordingly, the question to be decided on this motion

12  is whether plaintiff's evidence indicates that the propriety of the

13  classification may be determined on a collective basis.   Id.   It

14  is   not   sufficient   to   show   that   defendant's   alleged   mis-

15  _____

16  defendant that will bear the burden of proof on the ultimate
    question of whether the mortgage underwriters were properly
17  classified as "exempt."   Christopher v. SmithKline Beecham Corp.,
    635 F.3d 383, 391 (9th Cir.) ("The employer always has the burden
18  of showing the exemption applies to its employee"), cert. denied,
    565 U.S. ___, 132 S. Ct. 760 (2011).
19

20      [7] The certification, which is within the court's discretion,
    is "conditional," because it may be revisited once the case is
21  ready for trial.   Kress, 263 F.R.D. at 628.   If the court finds
    initial certification appropriate, it may order notice to be
22  delivered to potential plaintiffs.   Hoffmann-La Roche, 493 U.S. at
    172.   We are at the first stage.   The second stage is typically
23  triggered by an employer's motion for decertification, and usually
    comes at the conclusion of discovery.

24      [8] Technically, plaintiff's claim is only that defendant mis-
    classified her and her fellow mortgage underwriters as "exempt,"
25  since defendant did not disclose until it filed its Opposition that
    the   specific   exemption   it   claimed   was   the   "administrative"
26  exemption.

8

1   classification affected all proposed class members.  Id.  On the

2   other hand, plaintiff need not conclusively establish that

3   collection resolution is proper, because defendant will be free to

4   revisit this issue at the close of discovery.  Id.

5       Application of the administrative exemption is fact specific.

6   Id.; 29 C.F.R. § 541.2 ("The exempt or nonexempt status of any

7   particular employee must be determined on the basis of whether the

8   employee's salary and duties meet the requirements of the

9   regulations in this part").  In order to qualify for the exemption,

10  "an employee's 'primary duty' must be the performance of exempt

11  work," and the determination of an employee's "primary duty" is

12  "based on all the facts in a particular case."   29 C.F.R. §

13  541.700(a).   However, the need to examine the facts of an

14  employee's work does not categorically preclude collective

15  determination of exemption.  In cases concerning exemption, courts

16  have found collective certification appropriate where evidence

17  indicates that prospective class members' job duties were

18  substantially similar.  Id.

19  **III. ANALYSIS**

20      **A.   Motion to Seal.**

21      Defendant moves to seal the following documents, attached as

22  exhibits to the Declaration of Matthew C. Helland in Support of

23  Motion for Conditional Certification:

24  ////

25  ////

26  ////

1. **The entirety of Exhibit 1 (January 17, 2013 Deposition Transcript Excerpts of Alan Leimkuehler).**

   a. **Description of the exhibit.**

Exhibit 1 consists of excerpts of the January 17, 2013 deposition transcript of Alan Leimkuehler. These excerpts, which defendant asks this court to seal in their entirety, include: the title pages; the exhibit list; the page containing nothing more than Mr. Leimkuehler spelling his name and acknowledging that he is there for a deposition; the jurat page and the Reporter's Certificate page.[9] Also included in the blanket Request To Seal are: a discussion of information contained in defendant's Form 10-K, a public document filed with the U.S. Securities and Exchange Commission;[10] a discussion of positions and departments within the bank;[11] discussions of the specific job duties of the mortgage

_____

[9] The court lists these absurdities to emphasize the fact the defendant made no effort at all to seal only those portions of the substantive exhibits that it actually wanted to protect as confidential. Counsel should keep in mind that their Request To Seal is subject to the requirements, and the sanctions, of Rule 11, which applies to "Every pleading, written motion, and other paper" filed with this court. Fed. R. Civ. P. 11(a) (emphasis added) see also, E.D. Cal. R. 110 (sanctions for noncompliance with rules).

[10] Meanwhile, plaintiff filed the Form 10-K itself as an exhibit, without any objection or request to seal (which would be equally frivolous), by defendant.

[11] During the deposition discussion on positions and departments, counsel for defendant interjected that "This conversation about U.S. Bank's methods to prevent fraud and stuff is confidential to the bank, so can we mark this portion of the transcript as confidential?" Tr. at 40. She goes on to state: "To the extent that it's gone beyond just identifying positions and extending the steps that the bank takes, that's considered confidential." Id. This brief interjection indicates that at the time of the deposition, defendant did not consider it to be

underwriters;[12] training of mortgage underwriters;[13] general

statements of mortgage underwriters' compensation and incentives;[14]

_____

confidential simply to identify which positions existed at the bank, although, not surprisingly, counsel wanted to protect any detailed discussion of fraud prevention tools. Having apparently abandoned the sensible position it took at the deposition, the bank now seeks to seal even discussions of what departments and positions exist at the bank.

[12] Yet, defendant itself has submitted the Mortgage Underwriter Job Description, setting forth a "General Summary," a list of "Essential Functions," a "Specification[]" of the "general nature and level of work," and a "Leveling Guide" that distinguishes the three levels of mortgage underwriter. See Exh. C. (ECF No. 33-2) to the March 14, 2013 Decl. of Hali M. Anderson ("Anderson Decl.") (ECF No. 33-1).

Defendant has also submitted deposition transcript excerpts and declarations that set forth, in some detail, the specific job duties of the mortgage underwriter. See, e.g., Exh. D (Adams deposition) (ECF No. 33-2 at 20-26)(describing, among other things, the impact of specific credit information on the loan decision); Exh. F (Miller deposition) (ECF No. 33-2 at 36-48) (describing, among other things, how the mortgage underwriter responds when a particular type of loan cannot be approved, and describing the specific steps the mortgage underwriter takes when a loan application is "suspended"); Exh. G (Bunnell deposition) (ECF No. 33-2 at 49-54) (describing, among other things, when the mortgage underwriter had to get supervisor authority to approve a loan); Exh. I (Beckfeld Decl.) (ECF No. 33-2 at 58-65) (describing, among other things, the specific steps the mortgage underwriter takes upon receiving a loan application: "the first thing I do is look at the initial AUS results, the applicant's credit, analyze their debt ratio, their assets, and then the appraisal ..."); and Exh. J (Campbell Decl.) (ECF No. 33-2 at 66-74) (describing, among other things, how her performance is evaluated).

[13] Yet, defendant itself has submitted evidence relating to the training of mortgage underwriters. See, e.g., Exh. K (Crapser Decl.) (ECF No. 33-2 at 75-82) ¶ 7 ("U.S. Bank always provides ongoing training such as self-employed courses, VA training, and mortgage insurance training").

[14] The deponent talks about documents relating to compensation and incentives, but is never asked about, nor discloses, any specific dollar figures or incentive details (other than, generically, "a bonus"), from those documents.

1 discussions about employee discipline; performance expectations for

2 mortgage underwriters;[15] and whether mortgage underwriters are

3 classified as "exempt" and whether they are eligible for

4 overtime.[16]

5    Unsurprisingly, plaintiff opposed this astoundingly broad

6 request to seal the entirety of most of plaintiff's substantive

7 exhibits.

8              **b.    Request to seal Exhibit 1.**

9    Defendant's request to seal will be denied, both on legal

10 grounds and on factual grounds.  As a legal matter, defendant's

11 request to seal is improper under the standards articulated by the

12

13    Yet, defendant itself has submitted evidence relating to
   compensation and incentives.  See, e.g., Exh. L (Dougherty Decl.)
14 (ECF No. 33-2 at 83-90) (disclosing the dollar amount of her
   salary, and the fact that she "can earn incentives for underwriting
15 a certain amount of loans of good quality," and that "the incentive
   bonus is a reward for working extra hours to review additional
16 files").

17    [15] Yet, defendant has submitted evidence relating to the
   performance expectations of mortgage underwriters.    See, e.g.,
18 Exh. M (Flach Decl.) (ECF No. 33-2 at 91-98) (describing, among
   other things, how "[t]he quality of my underwriting factors into
19 my performance evaluations," and that "I am not evaluated only on
   my productivity.  I understand the quality of my underwriting to
20 be a critical component of the job and I know U.S. Bank is
   evaluating it because it is in our performance evaluations").

21    [16] These are, of course, the key contentions of this case, and
   they are undisputed, yet defendant requests that the court seal the
22 transcript portions relating to them.

23    Moreover, defendant itself has asserted that "U.S. Bank has
   classified them ['U.S. Bank's Mortgage Underwriters'] as exempt
24 administrative employees."  Opposition at 2.  Further, defendant
   has provided evidence confirming that its mortgage underwriters are
25 not paid overtime wages.  See, e.g., Exh. N (Glatte Decl.) (ECF No.
   33-2 at 99-106) ("I am paid the same base amount regardless of how
26 many hours per week I actually work").

1  Ninth Circuit.  In its Request To Seal, defendant asserts that the

2  documents ("95 pages total"), "<u>all</u> relate to U.S. Bank's internal

3  underwriting  and/or  compensation  policies,  procedures,  and

4  practices."  Request To Seal (ECF No. 23-1) at 3 (emphasis added).

5  Based upon this assertion, defendant asserts that every page of

6  most  of  plaintiff's  substantive  exhibits  is  protected  from

7  disclosure  as  "trade  secrets,"  "proprietary  information,"  and

8  "information that U.S. Bank considers confidential" based upon the

9  parties' stipulated Protective Order.

10     Defendant has thus failed to identify with any particularity

11  which of the 95 pages is actually confidential and needs to be

12  sealed, as required by the Ninth Circuit standards.  Instead, it

13  has requested the sealing of all 95 pages of exhibits, without

14  regard to the plainly non-confidential nature of most of them as

15  described  above.   Possibly  worse,  defendant  seeks  to  seal

16  <u>plaintiff</u>'s evidence regarding issues that <u>defendant</u> has produced

17  evidence on.  In many cases, defendant's evidence is specific and

18  detailed, yet it fully discloses it, while asking the court to seal

19  the  far  more  general  discussion  of  the  exact  same  thing,  as

20  submitted by plaintiff.

21     Given  the  opportunity  to  defend  and  narrow  its  request  to

22  seal, defendant refused to back down on Exhibit 1.  <u>See</u> Reply in

23  Support of Request To Seal ("Seal Reply") (ECF No. 23-1) at 2.

24  Instead,  defendant  asserts,  for  example,  that  the  deponent

25  testified  about  "the  specifics  of  U.S.  Bank's  compensation

26  policies."  <u>Id.</u>, at 2.  This is problematic for at least two

13

1  reasons.   First, defendant does not identify where in deponent's

2  testimony, these "specifics" are located.   Second, the court

3  searches the transcript in vain for these "specifics."   Thus, the

4  assertion is legally insufficient, and appears to be factually

5  untrue.

6      The deposition transcript includes much <u>general</u> information

7  about compensation: underwriters are paid a "base salary," and they

8  may earn an "incentive," which may be a "bonus."   The most specific

9  information about the incentive tells, in general terms, how the

10 incentive is calculated, that is, how many loan files must be

11 completed and in what time period, in order to earn the incentive.

12     In any event, nowhere in the deposition transcript is the

13 amount of the salary disclosed,[17] nor the amount of any incentive,

14 nor the amount of any bonus.   Defendant does not advise the court

15 why any of the information disclosed in the deposition transcript

16 is confidential.   Defendant, in its Reply, asserts that its

17 "compensation structure" is confidential.   However it does not

18 assert which information in the transcript discloses the

19 compensation structure: is it that the bank pays its employees;

20 that the mortgage underwriters are eligible for incentive pay; that

21 the incentive pay is determined by a formula; or is it the formula

22 itself?  Aside from the specifics of the formula itself, defendant

23 has freely disclosed all of this, in its declarations opposing

24 conditional certification.   These declarations disclose that the

25 _____

26     [17] The declarations submitted by <u>defendant</u> disclose specific
   salaries of mortgage underwriters.

1   employees are paid a salary, that they are eligible for incentive

2   pay, and that the amount of the incentive depends on how many loans

3   they underwrite.[18]

4        By seeking to seal the entirety of this discussion, defendant

5   fails to identify with any particularity which portion of it is

6   really confidential.  If defendant wished to seal, for example, a

7   discussion of the specific formula used to determine incentive pay,

8   it should have made such a request.  It failed to do so, and

9   accordingly, Exhibit 1 will not be sealed.

10       Defendant makes a similar request to protect its "confidential

11  internal policies and guidelines."  But once again, it fails to

12  identify which portions of the deposition transcript discloses this

13  information.  The court will not guess which information defendant

14  is referring to.

15              **2.   The __entirety__ of Exhibit 2 (Janury 17 & 18, 2013**
                **deposition transcript excerpts of plaintiff).**

16

17       Exhibit 2 consists of excerpts of two deposition transcripts

18  of Lisa Park.  These excerpts, which defendant asks this court to

19  seal in their entirety, include: the title pages, Attorney

20  Appearances page, exhibit list, jurat page, and the Reporter's

21  Certification page; the introductory pages, in which the deponent

22       [18] __See__ Beckfeld Decl. (ECF No. 33-2) ¶ 5 ("In addition to my
23  salary, I am able to earn incentives if I underwrite a certain
    amount of loans and the loans are of good quality"); Campbell Decl.
24  (ECF NO. 33-2) at 68 ¶ 5 (same); Crapser Decl. (ECF No. 33-2) at
    77 ¶ 5 (same); Daugherty Decl. (ECF No. 33-2) at 85 ¶ 5 (same);
25  Flach Decl. (ECF No. 33-2) at 93 ¶ 7 (same); Glatte Decl. (ECF
    No. 33-2) at 101 ¶ 5 (same); Jenkins Decl. (ECF No. 33-2) at 109
26  ¶ 5 (same); Larson Decl. (ECF No. 33-2) at 118 ¶ 6 (same); Streff
    Decl. (ECF No. 33-2) at 126 ¶ 5 (same).

states her name and that she is there to testify on behalf of defendant; a discussion of the locations of certain cities and towns – locations of defendant's branches – such as "Chicago,"[19] "Los Alamitos" (California), "Denver" (Colorado), and "Portland" (Oregon); the birthplace of plaintiff's counsel, and the distinction between where counsel was "born," and where he is "from;"[20] requirements and expectations of mortgage underwriters; how mortgage underwriters are evaluated; whether the mortgage underwriters are classified as "exempt," and whether they are eligible for overtime pay; whether mortgage underwriters obtain training; whether mortgage underwriters' hours are logged; a discussion of the deponent's job; how fraud is detected and addressed; mortgage underwriter compensation and incentive plans (apart from the absence of overtime pay); specific programs used for mortgage underwriter training; how defendant responds when facing a payment default; mention of the existence of a quality assurance department; and specifics of how an underwriting assignment is carried out.

This request is subject to the same weakness as discussed for Exhibit 1.  Most of the discussion in the transcript is freely disclosed elsewhere by defendant.  The court will not do the defendant's job of separating out which portions of the transcripts need to be sealed, from those that do not.  It may well be, for

[19] The deponent testifies that it is in Illinois.

[20] "I was [born in Edina] ... but I'm not an Edina guy."

16

1    example, that even the very general discussion about fraud

2    prevention could be subject to sealing.   However, defendant does

3    not ask that the general discussion on fraud be sealed, rather it

4    requests that <u>all</u> the transcript excerpts (and most of plaintiff's

5    other substantive exhibits) be sealed.   The court will not guess

6    which portions of the transcript defendant really has in mind.

7    Accordingly the request to seal Exhibit 2 will be denied.

8                    **3.   Exhibits 3-5, 8.**

9         Exhibits 3-5 and 8 consist of employee incentive plans.

10   Plaintiff has not specifically opposed the request to seal these

11   exhibits (although they have objected to requests to seal the

12   deposition testimony in which these exhibits are discussed).   These

13   documents are not necessary for the court's decision on this motion

14   for conditional certification, and accordingly, the request to seal

15   them will be granted, without prejudice, and only with respect to

16   this motion.   That is, plaintiff may re-submit these exhibits, if

17   they are necessary for the court's decision on another matter, and

18   any subsequent request to seal them can be determined at that time.

19                   **4.   Exhibits 6, 7 and 9.**

20        Exhibit 6 is an "Action Plan" for "Unsatisfactory

21   Performance," for a specific, named employee.   Exhibit 7 is a

22   "Performance Review" for a specific, named employee.   Exhibit 9 is

23   a company email regarding the job performance of a specific, named

24   employee.

25        Defendant apparently (and sensibly), no longer requests that

26   these exhibits be sealed in their entireties, and instead agrees

17

1    with plaintiff that "employee names in performance reviews and

2    emails relating to job performance" should be redacted.  Defendants

3    also request that any employee identification numbers be redacted.

4    The court accordingly will deny the request to seal these documents

5    in their entireties, and instead will direct plaintiff to redact

6    all  employee  identification  numbers  from  the  exhibits.    In

7    addition,  plaintiff  should  redact  all  employee  names  where  the

8    employee is the <u>subject</u> of the document.  That is, there is no need

9    to redact the names of the persons writing or receiving an email,

10   or the person writing the Action Plan or the person writing the

11   Performance Review.

12        **B.    Conditional Certification**

13             **1.    The Prospective Class Members – Similarly Situated.**

14        The basics of plaintiff's initial showing are not in dispute.

15   Defendant  has  classified  all  of  its  mortgage  underwriters,  the

16   prospective class members, as "exempt," and has done so at least

17   since  2009.   Rule  30(b)6  Dep.  of  U.S.  Bank  (Alan  Leikmuehler)

18   (January  17,  2013)  ("Leimkuehler  Depo.")  /  Exhibit  1,  Pages  55  &

19   102.[21]   Also, the prospective class members are not eligible for

20   overtime  pay.    <u>Id.</u>,  at  Page  62.   As  for  the  specifics  of  the

21   administrative  exemption,  plaintiff  has  submitted  sufficient

22   evidence in support of her claim that the prospective class members

23   are "similarly situated."

24   _____

25        [21] The citations to the as-yet unfiled deposition transcripts
     refer to the page numbers at the bottom of the transcripts, reading
26   "Exhibit ___, Page ___."

1
2

### a. Are mortgage underwriters helping to run the business?

An employee earning over $455 per week[22] is exempt as an "administrative" employee if her "primary duty" is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and her "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. §§ 541.200(a)(2), (a)(3); <u>cf.</u> <u>Miller v. Farmers Ins. Exchange (In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litigation)</u>, 481 F.3d 1119, 1127 (9th Cir. 2007) (citing the 2004 version of the regulation).

In turn, work is "directly related to the management or general business operations" if it is "directly related to assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). That is, the essence of the exemption is that the mortgage underwriters must be engaged in, or least assist in, "the running of a business," including the determination of "its overall course or policies." <u>Bratt v. County of Los Angeles</u> 912 F.2d 1066, 1070 (9th Cir. 1990) (interpreting an earlier version of the regulation), <u>cert. denied</u>, 498 U.S. 1086 (1991). This does not include merely "the day-to-day carrying out" of the business's affairs. <u>Id.</u>

Plaintiff has presented common proof of what defendant's

---

[22] <u>See</u> 29 C.F.R. § 541.600(a) (exemptions apply only to employees "compensated on a salary basis at a rate of not less than $455 per week").

1   business is, as it relates to the mortgage underwriters.   The

2   defendant's Form 10-K sets forth in excruciating detail what that

3   business is.   <u>See</u> Declaration of Matthew C. Helland in Support of

4   Plaintiffs' Motion for Conditional Certification ("Helland Decl."),

5   Exh. 3 (ECF No. 29-3).   Plaintiff has also presented common proof

6   – in the form of declarations and Rule 30(b)(6) depositions of

7   defendant – of the mortgage underwriters' job duties, their day-to-

8   day activities, their compensation, and how they are evaluated.

9   At the level of scrutiny appropriate to this stage of the

10  litigation, this evidence tends to show that the mortgage

11  underwriters are not engaged in running the defendant's business.

12  Rather, it tends to show that they are engaged in the day-to-day

13  carrying out of the business of mortgage lending.

14      For example, plaintiff's evidence is that the decisions about

15  who will get a loan is made by the defendant, through its lending

16  guidelines and policies.[23]   The mortgage underwriters, according to

17  plaintiff's evidence, compare the documentation they receive from

18  a loan applicant against the guidelines and policies set out for

19  them, to determine whether the loan applicant meets the

20  requirements of the guidelines and policies.   On its face, this is

21  evidence that the mortgage underwriters – all of them – are not

22  engaged in running the business or setting underwriting policy, but

23  _____

24      [23] As defendant points out, the underwriters themselves are
    not of one voice on whether they have "final" say on granting or
    denying these loans.   However, it is undisputed that whether their
25  say is final or preliminary, it is made only pursuant to the
    guidelines and policies set forth by defendant, and which they are
26  required to follow.

1   simply carrying out the day-to-day determinations of whether
2   Applicant A meets guidelines B, C and D.  <u>See</u> 29 C.F.R. § 541.704
3   ("The section 13(a)(1) exemptions are not available ... for
4   employees who simply apply well-established techniques or
5   procedures described in manuals or other sources within closely
6   prescribed limits to determine the correct response to an inquiry
7   or set of circumstances").[24]

8       Plaintiff's evidence includes declarations from prospective
9   class member mortgage underwriters working in defendant's offices
10  in North Dakota, California, Oregon and Colorado.  Each states,
11  that her "primary job duty" is to ensure that "the loans that were
12  approved by defendants were approved pursuant to various policies,
13  procedures and guidelines."[25]   The Mortgage Underwriter Job
14  Description plaintiff submitted also indicates that plaintiffs
15  approve or deny loans "within certain limits," and sets out
16  specific duties apparently applicable to all mortgage underwriters
17  in the prospective class.  <u>See</u> Helland Decl., Exh. 8 ("Job
18  Description") (ECF No. 29-12).

19
20      [24]  However, "The use of manuals, guidelines or other
    established procedures containing or relating to highly technical,
21  scientific, legal, financial or other similarly complex matters
    that can be understood or interpreted only by those with advanced
22  or specialized knowledge or skills does not preclude exemption
    under section 13(a)(1) of the Act or the regulations in this part.
23  Such manuals and procedures provide guidance in addressing
    difficult or novel circumstances and thus use of such reference
24  material would not affect an employee's exempt status."  <u>Id.</u>

25      [25]  <u>See</u> ¶ 3 of the Declarations of Andreasen (ECF No. 28-3),
    Leiting (ECF No. 28-4), Trump (ECF No. 28-5), Miller (ECF No. 28-
26  6), Conner (ECF No. 28-7), and Williams (ECF No. 28-8); Leimkuehler
    Depo. at 53.

According to plaintiff's evidence, the mortgage underwriters follow the policies, procedures and guidelines applicable to their work.   See Job Description (evaluates loan applications "in accordance with industry and business unit standards;" develops loan underwriting portfolio "consistent with the Bank's guidelines").   The prospective class members do not create or modify these policies, procedures or guidelines.[26]   They do not price the loans.  Leimkuehler Depo. at 53.  They do not monitor the loans' compliance with legal requirements.  Leimkuehler Depo. at 55.   They do not conduct post-closing audits of any loans. Leimkuehler Depo. at 56.  Although there are different levels or types of underwriters, they all apply the same guidelines. Leimkuehler Depo. at 74.   While there is some "flexibility" or "variance" in how the mortgage underwriters carry out their jobs, "[a]s part of the day-to-day duties, the variance would be limited to guidelines given to the underwriters." Leimkuehler Depo. at 21. None of the prospective class members determine what type of loan would be offered.  ECF Nos. 28-3 to 28-8.

The above evidence, taken from plaintiffs' declarations and the defendant's Rule 30(b)(6) deposition, are sufficient to show that the prospective class members are "similarly situated" in respect to whether they are running a business, or simply engaged

---

[26] See ¶ 3 of the Declarations of Andreasen (ECF No. 28-3), Leiting (ECF No. 28-4), Trump (ECF No. 28-5), Miller (ECF No. 28-6), Conner (ECF No. 28-7), and Williams (ECF No. 28-8); Leimkuehler Depo. at 53.

1  in the day-to-day carrying out of the business.[27]

2         **b.  Defendant's showing.**

3         Defendant opposes the motion based upon its assertion that it

4  has submitted declarations that say "the opposite" of what

5  plaintiff's declarations state.  Even if defendant were correct in

6  its assertion, it is not enough to rebut the plaintiff's showing.[28]

7         Defendant asserts that plaintiff is incorrect in asserting

8  that mortgage underwriters do not make "counter-offers."

9  Opposition at 10-11.    Rather, according to defendant,

10  "understanding the different types of loans U.S. Bank offers, and

11  suggesting alternatives where appropriate [making counter-offers],

12  was part of the Mortgage Underwriters' duties."  Id.

13         Defendant fails to explain, however, how making counter-offers

14  affects the determination of whether an employee is exempt.  For

15  example, is defendant arguing that an employee who makes a counter-

16  offer is running the business, or that she exercises discretion and

17  independent judgment, or both.  If defendant is arguing that it

18  shows discretion and independent judgment, then it is not relevant

19  to the task at hand, because plaintiff, at this point, has not

20  relied on that portion of the exemption.  Even if counter-offer

21

22         [27] Plaintiff makes no mention of the other two requirements
for the administrative exemption.  Since it will be defendant's
23  burden to establish that all three requirements are satisfied,
plaintiff is entitled to take this course, however risky.
24

25         [28] In any event, defendant is not correct that its
declarations say "the opposite" of what plaintiff's say.  Defendant
26  has simply submitted declarations that put a different "spin" on
what plaintiff's declarants have said.

1  making demonstrates that mortgage underwriters exercise discretion
2  and independent judgment, they are still not exempt if they are not
3  engaged in the running of the business.

4      Even assuming there is a dispute here relating to the business
5  and management portion of the exemption, it is irrelevant to the
6  task of determining whether plaintiff has shown that mortgage
7  underwriters are "similarly situated" for purposes of the
8  administrative exemption.  All defendant has done is shown that
9  some U.S. Bank mortgage underwriters <u>believe</u> that making counter-
10 offers is one of their job duties, while others <u>believe</u> that it is
11 not part of their job.[29]  However this "dispute" is resolved, it
12 does not contribute to resolution of the critical question of what
13 the mortgage underwriters' "primary duty" is.

14     Defendant does not assert that plaintiff's "primary duty" is
15 making counter-offers, nor is there any evidence that it is.
16 Whether an individual, cherry-picked job duty is or is not
17 applicable to mortgage underwriters simply does not assist the
18 court in determining whether they shared "primary" job duties.  In
19 other words, even if an underwriter makes a counter-offer once each
20 month, for example, and assuming that making counter-offers is an
21 exempt job duty, if she spends the remaining 99% of her job doing

22 _____

23     [29]  In any event, even if the court were simply to credit
    defendant's declarations and disregard plaintiff's allegedly
24  contrary ones – even though there is no legal basis for doing so
    at this stage – then it would still be the case that the
25  prospective class members were "similarly situated."  That is, they
    are similarly situated because they <u>do</u> make counter-offers when
26  appropriate (rather than being similarly situated because they <u>do</u>
    <u>not</u> make counter-offers).

1   non-exempt work, then she is not exempt.   Thus, resolving the

2   esoteric question of whether the mortgage underwriters do or do not

3   make counter-offers is pointless without the information defendant

4   has failed to present: is this the mortgage underwriters' primary

5   duty?   Alternatively, does this, added together with other exempt

6   duties, comprise the mortgage underwriters' primary duty?   It

7   simply is not enough to identify isolated activities that a

8   mortgage underwriter might engage in.   The activities must be

9   exempt, and they must comprise the underwriter's primary duties.

10          Defendant appears to argue that 29 C.F.R. § 541.203(b) is

11   conclusive on whether mortgage underwriters are exempt or not.

12   However, that regulation only provides "examples" of employees in

13   the   financial   services   industry   who   "generally"   meet   the

14   requirements for the administrative exemption.   This regulation may

15   be useful when, in due course, the court is called upon to rule on

16   the merits of the exemption.[30]   This motion, however, is about

17   _____

18           [30] The regulation provides:

19           Employees in the financial services industry generally
             meet   the   duties   requirements   for   the   administrative
20           exemption if their duties include work such as
             collecting   and   analyzing   information   regarding   the
21           customer's   income,   assets,   investments   or   debts;
             determining   which   financial   products   best   meet   the
22           customer's needs and financial circumstances; advising
             the customer regarding the advantages and disadvantages
23           of   different   financial   products;   and   marketing,
             servicing   or   promoting   the   employer's   financial
24           products. However, an employee whose primary duty is
             selling   financial   products   does   not   qualify   for   the
25           administrative exemption.

26   29 C.F.R. § 541.203(b).

1  whether the class should be conditionally certified, not whether

2  plaintiff or defendant will ultimately prevail on the merits of the

3  lawsuit.

4      Defendant further asserts that the declarations contradict

5  each other on how mortgage underwriters are evaluated.  In fact,

6  there is no contradiction in the declarations.  Plaintiff's

7  declarations state that they are <u>eligible</u> for incentives if they

8  complete a certain number of loans, which is exactly what

9  defendant's declarations say. Defendant's declarations go further,

10  however, and state that the loans must <u>also</u> be of a certain quality

11  to actually receive the incentive.  These statements are not

12  "opposite" or "contradictory."  Moreover, even if the court were

13  to accept defendant's declarations in full, and reject plaintiff's,

14  they would show that mortgage underwriters are "similarly situated"

15  in how they are evaluated.[31]

16      The remainder of defendant's arguments essentially attack

17  plaintiff's motion for failing to "prove" that the mortgage

18  underwriters were mis-classified as exempt. Defendant's arguments

19

20

_____

21      [31] Defendant also asserts that, according to the evidence,
some mortgage underwriters are the final decisionmakers on loans,
22  while others are not, showing that they are not "similarly
situated."  <u>See</u> Opposition at 12.  However, in the same brief,
23  defendant asserts that they are all final decisionmakers: "U.S.
Bank's Mortgage Underwriters ... are the final decision-makers for
24  U.S. Bank." Opposition at 6.  Defendant, in short, is arguing both
that <u>all</u> mortgage underwriters are final decision-makers, and that
25  some are not.  Its "argument" here will be disregarded, although
defendant is well advised to resolve its cognitive dissonance
26  before the court reaches the merits portion of this case.

1  fail  because,  first,  it  will  be  <u>defendant</u>'s  burden  (not
2  plaintiff's)  to  show  that  the  underwriters  were  properly  classified
3  as  exempt.   Second,  this  is  a  motion  for  conditional  certification,
4  and  the  court  is  not  called  upon  here  to  make  the  merits
5  determination  that  defendant  seeks.

6      Even  if  the  court  were  to  consider  contradictory  evidence  at
7  this  stage – which  the  cases  indicate  is  not  appropriate – there
8  simply  is  nothing  there  that  contradicts  plaintiffs'  evidence.   The
9  defendants'  evidence  simply  puts  a  different  "spin"  on  it.   For
10 example,  defendant  asserts  that  its  evidence  shows  that  mortgage
11 underwriters  engage  in  "'analyzing  loan  applications  to  determine
12 a  customer's  creditworthiness.'"  But  that  is  what  plaintiff's
13 evidence  shows,  just  phrased  differently.   Defendant  does  not
14 dispute  that  in  analyzing  loan  applications,  mortgage  underwriters
15 are  bound  by  the  bank's  guidelines.

16     **B.   Williams as Class Representative.**

17     Defendant  asserts  that  plaintiff  signed  a  severance  agreement
18 upon  leaving  U.S.  Bank  that  waived  "all  claims  upon  termination  of
19 her  employment."   Opposition  at  20.   However  it  appears  that  "an
20 individual  employee's  right  to  a  minimum  wage  and  to  overtime  pay
21 under  the  Act  [FLSA],"  is  "nonwaivable."   <u>Barrentine  v.</u>
22 <u>Arkansas-Best  Freight  System,  Inc.</u>,  450  U.S.  728,  740  (1981).   It
23 would  appear  therefore,  that  plaintiff's  "waiver"  is  of  no  legal
24 significance.

25     **C.   Notice**

26     Plaintiff  has  submitted  a  proposed  notice  to  potential  class

1   members.  See Proposed Notice (ECF No. 29-15).  Defendant has three
2   objections to the Proposed Notice.

3         **1.  Warning that plaintiffs may be liable for costs and**
            **counterclaims.**
4

5         Defendant argues that potential class plaintiffs should be
6   warned that they "may be held liable for costs associated with the
7   lawsuit and for potential counterclaims that could be asserted
8   against them."   Opposition at 20-21.   The only counterclaim
9   defendant identifies is something it calls "breach of the Release
10  of Claims" against an employee who signed a "Release of Claims."
11  However it appears that "an individual employee's right to a
12  minimum wage and to overtime pay under the Act [FLSA]," is
13  "nonwaivable."  Barrentine, 450 U.S. at 740.  Defendant does not
14  explain how it could have a counterclaim for "breach of Release of
15  Claim," even if such a cause of action otherwise exists, in light
16  of Barrentine.

17        As for costs of the lawsuit, plaintiffs' counsel represents
18  and states in a Declaration: "In my firm's fee agreements with
19  individual Plaintiffs, my firm has agreed to pay all costs imposed
20  on Plaintiffs, to the extent ethical rules allow.  We would not
21  pass these costs back on to individual Plaintiffs."   Reply
22  Declaration of Matthew C. Helland (ECF No. 35-1) ¶ 4.  Moreover,
23  defendant has not identified a single instance where an FLSA class
24  plaintiff has been taxed the costs of suit.  In light of this, it
25  appears that the proposed warning would have the sole effect of
26  chilling potential plaintiffs' participation in this lawsuit.

1                    **2.    Limitations and Opt-In Period.**

2          Defendant argues that the notice be directed only to persons

3    who are within the two-year statute of limitations, rather than the

4    three-year period applicable to "willful" violations.  Defendant

5    asserts that plaintiff has failed to establish an "evidentiary

6    basis" for a willful violation in their motion.  Defendant offers

7    no citation to any authority, nor any explanation for why a motion

8    for conditional certification should include substantive evidence

9    of a willful violation.  The defendant's objection appears without

10   substantive justification and is overruled.  Plaintiffs have

11   sufficiently alleged a willful violation in their complaint, and

12   will be put to their proof at the appropriate time.[32]    The

13   evidentiary burden plaintiffs have in this motion, is to show the

14   court that the proposed plaintiffs are "similarly situated," a

15   burden they have met.

16         Defendant also objects to the 90-day opt-in period, proposing

17   instead a 60-day period, "which courts in this Circuit have found

18   to be reasonable," citing two cases, one from the District of

19   Nevada and one from the Northern District of California.  The

20   objection, in other words, offers no independent reason the period

21   should be reduced from 90 to 60 days, considering that some courts

22   in this Circuit have approved 60 days, and others have approved 90

23   _____

24         [32] In any event, plaintiffs' evidence submitted in support of
     the motion for conditional certification clearly shows that
25   defendant willfully declined to pay overtime wages to employees who
     worked overtime hours.  The question of whether this is lawful or
26   not is the ultimate question to be decided by this court.

1    days.[33]   The objection is overruled.

2                    **3.   Neutral third party administrator.**

3          Defendant reminds the court that "trial courts must take care

4    to avoid even the appearance of judicial endorsement of the merits

5    of the action."   Hoffmann-La Roche, 493 U.S. at 174.   However,

6    defendant does not explain why the proposed notice would violate

7    judicial neutrality in this case.   The objection is overruled.

8    **IV. CONCLUSION**

9          For the reasons stated above:

10

_____

11          [33] See, e.g., Gee v. Suntrust Mortg., Inc., 2011 WL 722111 at
     *4 (N.D. Cal. 2011) (in an FLSA collective action regarding
12   mortgage underwriters, the court approves a 90-day opt-in period
     for mortgage underwriters) (Seeborg, J.);   Ramirez v. Ghilotti
13   Bros. Inc., 2013 WL 1786636 at *7 (N.D. Cal. 2013) (Breyer, J.) (in
     a case involving laborers, the court authorized notice in English
14   and in Spanish, and rejected defendant's "proposed reduction of the
     opt-in period from 90 to 60 days"); Brewer v. General Nutrition
15   Corp., 2013 WL 100195 at *5 (N.D. Cal. 2013) (Rogers, J.)
     (regarding retail store employees, "[t]he opt-in period shall be
16   90 days from the date the notice is sent");   Collinge v.
     Intelliquick Delivery, Inc., 2012 WL 3108836, 3 (D. Ariz. 2012)
17   (Sedwick, J.) (regarding delivery drivers, the court rejected
     defendant's 30-day proposal, and plaintiff's 90-day proposal, and
18   concluded that "sixty days from the date of the notice is an
     appropriate opt-in period"); Sanchez v. Sephora USA, Inc., 2012
19   WL 2945753 at *6 (N.D. Cal. 2012) (Armstrong, J.) (regarding
     salespersons, "the Court finds that a notice period of sixty days
20   sufficiently balances both parties' concerns and is reasonable
     under the circumstances presented") (and collecting cases); Luque
21   v. AT&T Corp., 2010 WL 4807088 at *7 (N.D. Cal. 2010) (Breyer, J.)
     (regarding telephone company field managers, court approves a 60-
22   day opt-in period); Lewis v. Wells Fargo & Co., 669 F. Supp. 2d
     1124, 1126 (N.D. Cal. 2009) (Wilken, J.) (regarding bank's
23   information technology employees, court approved a 75-day opt-in
     period); Stanfield v. First NLC Fin. Svcs., LLC, 2006 WL 3190527
24   at *6 (N.D. Cal. 2006) (Armstrong, J.) (regarding loan officers,
     court approved 60-day opt-in period);   Carrillo v. Schneider
25   Logistics, Inc., 2012 WL 556309 at *15 (C.D. Cal.) (180-day opt-in
     period appropriate for class of low-income migrant workers), aff'd
26   mem. on another issue, 501 Fed. Appx. 713 (9th Cir. 2012).

1      1.   Defendant's Request to Seal Exhibits 1 and 2, is

2  **DENIED**, and plaintiff shall file these documents, unredacted, in

3  the public docket no later than 21 days from the date of this

4  order;

5      2.   Defendant's Request to Seal Exhibits 3-5 and 8, is

6  **GRANTED**, as unopposed (that is, not on the merits), and without

7  prejudice to plaintiff's ability to re-submit them in connection

8  with another motion;

9      3.   Defendant's Request to Seal Exhibits 6, 7 and 9, is

10 **DENIED**, except to the degree that the request seeks the redaction

11 of the names of employees who are the subject of those performance-

12 related documents, and except to the degree that it seeks the

13 redaction of all employee identification numbers, and plaintiff

14 shall file redacted versions of these documents in the public

15 docket no later than 21 days from the date of this order;

16     4.   Plaintiffs shall file unredacted versions of their

17 memoranda and supporting documents in support of the motion for

18 conditional certification, retaining only such redactions, if any,

19 as are necessary to comply with this order;

20     5.   Plaintiff's motion for conditional certification is

21 **GRANTED**; and

22     6.   Plaintiff shall send its Notice of Collective Action

23 Lawsuit forthwith to all potential class members.  The notice shall

24 contain no advertising, commentary or any other material, other

25 than what is disclosed at ECF No. 29-15.

26 ////

1      IT IS SO ORDERED.

2      DATED:   June 20, 2013.

3

4

5                               LAWRENCE K. KARLTON

6                               SENIOR JUDGE
                              UNITED STATES DISTRICT COURT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26