1

2

3

4

5

6

7                     UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   KAREN WILLIAMS, individually
     and on behalf of all others
11   similarly situated,

12        Plaintiff,
                                        NO. CIV. S-12-1907 LKK/EFB
13        v.

14   U.S. BANK NATIONAL ASSOCIATION
     and DOES 1-50, inclusive,              O R D E R
15
          Defendants.
16   _____/

17        Plaintiff  seeks  conditional  certification  of  a  class  of

18   current and former mortgage underwriters employed by defendant U.S.

19   Bank.  Defendant has requested that the court seal every single

20   page  of  most  of  the  substantive  exhibits  that  plaintiff  has

21   submitted in support of the conditional certification motion.[1]  For

22   the  reasons  that  follow,  plaintiff's  conditional  certification

23   _____

24        [1] To its credit, defendant has not requested the sealing of
     its Form 10-K, a public document, nor the mortgage underwriter job
25   description.  Nor has it requested the sealing of procedural
     documents (proposed notice forms, postcard and envelope), and
26   materials taken from public websites.

                              1

motion will be granted, and defendant's request to seal will be denied for the most part, and granted in part.

**I.    BACKGROUND**

Plaintiff Karen Williams is a former mortgage underwriter for defendant U.S. Bank ("the bank"). Plaintiff alleges that the Bank "suffered and permitted" Williams to work overtime hours. Complaint (ECF No. 1) ¶ 9. However, the bank did not pay her overtime wages, even though, Williams alleges, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., required the bank to do so. Id.

The FLSA generally requires an employer to pay overtime wages for employees working more than 40 hours in a week. 29 U.S.C. § 207. The overtime provisions do not apply however, to "exempt" employees, including "any employee employed in a bona fide ... administrative ... capacity." 29 U.S.C. § 213(a)(1). In this case, defendant classified plaintiff as exempt pursuant to the "administrative employee" exemption. See Defendant's Opposition to Conditional Certification ("Opposition") (ECF No. 33) at 6.[2]

Plaintiff seeks to represent a nationwide class of U.S. Bank mortgage underwriters, and moves here for conditional certification of the class pursuant to 29 U.S.C. § 216. Plaintiff asserts that the proposed class members were together the victims of a single policy of defendant's, namely, that although mortgage underwriters were all entitled to overtime wages for overtime work, defendant

---

[2] The page numbers refer to the CMF/ECF page numbers, not the internal document page numbers.

1  uniformly mis-classified them as "exempt" so as to deny them the

2  overtime wages they were owed.  See See Memorandum in Support of

3  Motion For Conditional Certification and Judicial Notice ("Motion")

4  (ECF No. 28) at 7.  Plaintiff claims that the mortgage underwriters

5  performed the same job duties; were uniformly classified (or mis-

6  classified), as administrative employees who were "exempt" from the

7  overtime compensation laws; were paid in a similar manner; and

8  commonly worked overtime hours without receiving overtime wages.

9  See Motion at 6.

10  Defendant opposes the motion on the grounds that there are

11  conflicting declarations from the underwriters themselves – those

12  submitted by plaintiffs versus those submitted by defendant – about

13  what their job duties are, what authority they have to approve or

14  deny loans, and what is the basis for evaluating their job

15  performance.  See Defendant's Mem. of Points and Authorities in

16  Opposition (ECF No. 33) ("Opposition") at 10-12.  Defendant also

17  seeks to exclude plaintiff's own declaration on the ground that it

18  is "contrary to her deposition testimony," and therefore,

19  "inherently unreliable." See Opposition at 9-10.

20  **II.  STANDARDS**

21  **A.    Sealing Documents**

22  Courts have long recognized a "general right to inspect

23  and copy public records and documents, including judicial records

24  and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597

25  (1978) (denying release of the "Nixon tapes" that were played in

26  open court and entered into evidence).  "This right extends to

3

pretrial documents filed in civil cases." Estate of Migliaccio v. Allianz Life Ins. Co. (In re Midlan Nat'l Life Ins. Co. Annuity Sales Practices Lit.), 686 F.3d 1115, 1119 (9th Cir. 2012) (per curiam). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." Kamakana v. City and Cnty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003)).[3]   In order to overcome this strong presumption, a party seeking to seal a judicial record must articulate justifications for sealing that outweigh the historical right of access and the public policies favoring disclosure. See id. at 1178–79.

The Ninth Circuit has determined that the public's interest in non-dispositive motions is relatively lower than its interest in trial or a dispositive motion. Accordingly, a party seeking to seal a document attached to a non-dispositive motion need only demonstrate "good cause" to justify sealing. Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 678 (9th Cir. 2010) (applying "good cause" standard to all non-dispositive motions because such motions "are often unrelated, or only tangentially related, to the underlying cause of action") (internal quotation marks and citation

---

[3]   Materials traditionally kept secret include grand jury transcripts. See Times Mirror Co. v. U.S., 873 F.2d 1210, 1213 (9th Cir. 1989) ("Traditionally, for example, grand jury proceedings have been kept secret even though they are judicial proceedings which are closely related to the criminal fact-finding process") (rejecting press access to search warrant materials in an on-going criminal investigation).

1  omitted), <u>cert. denied</u>, 562 U.S. ___, 131 S. Ct. 900 (2011).  "The

2  party seeking protection bears the burden of showing specific

3  prejudice or harm will result if no [protection] is granted."

4  <u>Phillips v. Gen. Motors Corp.</u>, 307 F.3d 1206, 1210-11 (9th Cir.

5  2002).   That party must make a "<u>particularized showing</u> of good

6  cause with respect to any individual document."   <u>San Jose Mercury</u>

7  <u>News, Inc. v. U.S. Dist. Court, N. Dist. (San Jose)</u>, 187 F.3d 1096,

8  1103 (9th Cir. 1999) (emphasis added).  "Broad allegations of harm,

9  unsubstantiated by specific examples or articulated reasoning" are

10  insufficient. <u>Beckman Indus., Inc. v. Int'l Ins. Co.</u>, 966 F.2d 470,

11  476 (9th Cir.) (quoting <u>Cipollone v. Liggett Group, Inc.</u>, 785 F.2d

12  1108, 1121 (3rd Cir. 1986)), <u>cert. denied</u>, 506 U.S. 868 (1992).

13      Conversely, "the resolution of a dispute on the merits,

14  whether by trial or summary judgment, is at the heart of the

15  interest in ensuring the 'public's understanding of the judicial

16  process and of significant public events.'"  <u>Kamakana</u>, 447 F.3d at

17  1179 (quoting <u>Valley Broad. Co. v. U.S. Dist. Court for Dist. of</u>

18  <u>Nev.</u>, 798 F.2d 1289, 1294 (9th Cir. 1986)). Accordingly, a party

19  seeking to seal a judicial record attached to a dispositive motion

20  or one that is presented at trial must articulate "compelling

21  reasons" in favor of sealing. <u>See id.</u> at 1178. "The mere fact that

22  the production of records may lead to a litigant's embarrassment,

23  incrimination, or exposure to further litigation will not, without

24  more, compel the court to seal its records." <u>Id.</u> at 1179 (citing

25  <u>Foltz</u>, 331 F.3d at 1136). "In general, 'compelling reasons' . . .

26  exist when such 'court files might have become a vehicle for

1    improper purposes,' such as the use of records to gratify private

2    spite, promote public scandal, circulate libelous statements, or

3    release trade secrets." Id. (citing Nixon, 435 U.S. at 598).

4         Under the "compelling reasons" standard, a district court must

5    weigh "relevant factors," base its decision "on a compelling

6    reason," and "articulate the factual basis for its ruling, without

7    relying on hypothesis or conjecture." Pintos, 605 F.3d at 679

8    (quoting Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir.

9    1995)). "[S]ources of business information that might harm a

10   litigant's competitive standing" often warrant protection under

11   seal. Nixon, 435 U.S. at 598.

12        **B.   Conditional Certification.**

13        The FLSA allows a "collective action" to be brought on behalf

14   of "similarly situated" employees.   29 U.S.C. § 216(b); Kress v.

15   PwC, 263 F.R.D. 623, 627 (E.D. Cal. 2009) (Karlton, J.).   The

16   determination of whether prospective class members are similarly

17   situated is not made under the analysis required for Fed. R. Civ.

18   P. 23 class actions.   Kress, 263 F.R.D. at 627.[4]   Rather, the

19   courts generally apply a two-tiered approach.   Kress, 263 F.R.D.

20   at 627.[5]

21   _____

22        [4] Accord, McElmurry v. U.S. Bank Nat'l Ass'n, 495 F.3d 1136,
     1139 (9th Cir. 2007) (noting that Section 216(b) notice "has less
23   to do with the due process rights of the potential plaintiffs").

24        [5] There appears to be no definitive guidance on the use of the
     two-tiered approach from the Supreme Court or Ninth Circuit.
25   However, this court has adopted the two-tiered approach, as have
     Courts of Appeals across the country.   See Kress, 263 F.R.D. at
26   627; Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3rd
     Cir. 2012) (The "two-tier approach, while nowhere mandated, ...

Under the two tiered approach, the first tier is the "notice stage," which asks whether the employees are sufficiently "similarly situated" that notice should be sent to prospective plaintiffs under Hoffmann-La Roche v. Sperling, 493 U.S. 165 (1989). Kress, 263 F.R.D. at 627. It is plaintiff's burden to show that the class should be conditionally certified. See id. Plaintiff meets her burden by providing substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan.[6] Id. In determining whether plaintiff has carried her

---

appears to have garnered wide acceptance. We implicitly embraced this two-step approach, and we affirm its use here"); Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 916 (5th Cir. 2008) ("More specifically, collective actions typically proceed in two stages. First, the plaintiff moves for conditional certification of his or her collective action. The district court then decides, usually based on the pleadings and affidavits of the parties, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action. Second, once discovery is complete and the employer moves to decertify the collective action, the court must make a factual determination as to whether there are similarly-situated employees who have opted in. If so, the collective action may proceed, and if not, the court must dismiss the opt-in employees, leaving only the named plaintiff's original claims") (citations omitted); White v. Baptist Memorial Health Care Corp., 699 F.3d 869, 877 (6th Cir. 2012) ("District courts determine whether plaintiffs are similarly situated in a two-step process, the first at the beginning of discovery and the second after all class plaintiffs have decided whether to opt-in and discovery has concluded"); Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001) ("We find no error on the part of the district court in adopting the ad hoc approach") cert. denied, 536 U.S. 934 (2002). Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260-61 (11th Cir. 2008), cert. denied, 558 U.S. 816 (2009).

[6] Although plaintiff has the burden here of showing that she and the other mortgage underwriters were the victims of a single decision, policy or plan, the court keeps in mind that it is the

burden, the court need not consider evidence provided by defendants.  _Id._, at 628.  The determination is made based on a fairly lenient standard.[7]  _Id._

To make her showing, plaintiff must provide some allegations or evidence "indicating that prospective class members share similar job duties."  _Id._, at 630.  Accordingly, whether the mortgage underwriters are "substantially similar" must be evaluated in light of the issues raised by plaintiff's particular FLSA claim. In this case, as noted, plaintiff's claim is that defendant has mis-classified the mortgage underwriters as "exempt" administrative employees.[8]  Accordingly, the question to be decided on this motion is whether plaintiff's evidence indicates that the propriety of the classification may be determined on a collective basis.  _Id._  It is not sufficient to show that defendant's alleged mis-

_____

defendant that will bear the burden of proof on the ultimate question of whether the mortgage underwriters were properly classified as "exempt."  Christopher v. SmithKline Beecham Corp., 635 F.3d 383, 391 (9th Cir.) ("The employer always has the burden of showing the exemption applies to its employee"), cert. denied, 565 U.S. ___, 132 S. Ct. 760 (2011).

[7] The certification, which is within the court's discretion, is "conditional," because it may be revisited once the case is ready for trial.  Kress, 263 F.R.D. at 628.  If the court finds initial certification appropriate, it may order notice to be delivered to potential plaintiffs.  Hoffmann-La Roche, 493 U.S. at 172.  We are at the first stage.  The second stage is typically triggered by an employer's motion for decertification, and usually comes at the conclusion of discovery.

[8] Technically, plaintiff's claim is only that defendant mis-classified her and her fellow mortgage underwriters as "exempt," since defendant did not disclose until it filed its Opposition that the specific exemption it claimed was the "administrative" exemption.

1    classification affected all proposed class members.  Id.  On the
2    other hand, plaintiff need not conclusively establish that
3    collection resolution is proper, because defendant will be free to
4    revisit this issue at the close of discovery.  Id.

5        Application of the administrative exemption is fact specific.
6    Id.; 29 C.F.R. § 541.2 ("The exempt or nonexempt status of any
7    particular employee must be determined on the basis of whether the
8    employee's salary and duties meet the requirements of the
9    regulations in this part").  In order to qualify for the exemption,
10   "an employee's 'primary duty' must be the performance of exempt
11   work," and the determination of an employee's "primary duty" is
12   "based on all the facts in a particular case."  29 C.F.R. §
13   541.700(a).  However, the need to examine the facts of an
14   employee's work does not categorically preclude collective
15   determination of exemption.  In cases concerning exemption, courts
16   have found collective certification appropriate where evidence
17   indicates that prospective class members' job duties were
18   substantially similar.  Id.

19   **III. ANALYSIS**

20       **A.   Motion to Seal.**

21       Defendant moves to seal the following documents, attached as
22   exhibits to the Declaration of Matthew C. Helland in Support of
23   Motion for Conditional Certification:

24   ////

25   ////

26   ////

1.   **The <u>entirety</u> of Exhibit 1 (January 17, 2013 Deposition Transcript Excerpts of Alan Leimkuehler).**

a.   **Description of the exhibit.**

Exhibit 1 consists of excerpts of the January 17, 2013 deposition transcript of Alan Leimkuehler.  These excerpts, which defendant asks this court to seal in their entirety, include: the title pages; the exhibit list; the page containing nothing more than Mr. Leimkuehler spelling his name and acknowledging that he is there for a deposition; the jurat page and the Reporter's Certificate page.[9]  Also included in the blanket Request To Seal are: a discussion of information contained in defendant's Form 10-K, a public document filed with the U.S. Securities and Exchange Commission;[10] a discussion of positions and departments within the bank;[11] discussions of the specific job duties of the mortgage

_____

[9] The court lists these absurdities to emphasize the fact the defendant made no effort at all to seal only those portions of the substantive exhibits that it actually wanted to protect as confidential.  Counsel should keep in mind that their Request To Seal is subject to the requirements, and the sanctions, of Rule 11, which applies to "Every pleading, written motion, and other paper" filed with this court.  Fed. R. Civ. P. 11(a) (emphasis added) see also, E.D. Cal. R. 110 (sanctions for noncompliance with rules).

[10] Meanwhile, plaintiff filed the Form 10-K itself as an exhibit, without any objection or request to seal (which would be equally frivolous), by defendant.

[11] During the deposition discussion on positions and departments, counsel for defendant interjected that "This conversation about U.S. Bank's methods to prevent fraud and stuff is confidential to the bank, so can we mark this portion of the transcript as confidential?"  Tr. at 40.  She goes on to state: "To the extent that it's gone beyond just identifying positions and extending the steps that the bank takes, that's considered confidential."  Id.  This brief interjection indicates that at the time of the deposition, defendant did not consider it to be

underwriters;[12]   training   of   mortgage   underwriters;[13]   general

statements of mortgage underwriters' compensation and incentives;[14]

_____

confidential simply to identify which positions existed at the bank, although, not surprisingly, counsel wanted to protect any detailed discussion of fraud prevention tools.  Having apparently abandoned the sensible position it took at the deposition, the bank now seeks to seal even discussions of what departments and positions exist at the bank.

[12] Yet, defendant itself has submitted the Mortgage Underwriter Job Description, setting forth a "General Summary," a list of "Essential Functions," a "Specification[]" of the "general nature and level of work," and a "Leveling Guide" that distinguishes the three levels of mortgage underwriter.  See Exh. C. (ECF No. 33-2) to the March 14, 2013 Decl. of Hali M. Anderson ("Anderson Decl.") (ECF No. 33-1).

Defendant has also submitted deposition transcript excerpts and declarations that set forth, in some detail, the specific job duties of the mortgage underwriter.  See, e.g., Exh. D (Adams deposition) (ECF No. 33-2 at 20-26)(describing, among other things, the impact of specific credit information on the loan decision); Exh. F (Miller deposition) (ECF No. 33-2 at 36-48) (describing, among other things, how the mortgage underwriter responds when a particular type of loan cannot be approved, and describing the specific steps the mortgage underwriter takes when a loan application is "suspended"); Exh. G (Bunnell deposition) (ECF No. 33-2 at 49-54) (describing, among other things, when the mortgage underwriter had to get supervisor authority to approve a loan); Exh. I (Beckfeld Decl.) (ECF No. 33-2 at 58-65) (describing, among other things, the specific steps the mortgage underwriter takes upon receiving a loan application: "the first thing I do is look at the initial AUS results, the applicant's credit, analyze their debt ratio, their assets, and then the appraisal ..."); and Exh. J (Campbell Decl.) (ECF No. 33-2 at 66-74) (describing, among other things, how her performance is evaluated).

[13] Yet, defendant itself has submitted evidence relating to the training of mortgage underwriters. See, e.g., Exh. K (Crapser Decl.) (ECF No. 33-2 at 75-82) ¶ 7 ("U.S. Bank always provides ongoing training such as self-employed courses, VA training, and mortgage insurance training").

[14] The deponent talks about documents relating to compensation and incentives, but is never asked about, nor discloses, any specific dollar figures or incentive details (other than, generically, "a bonus"), from those documents.

discussions about employee discipline; performance expectations for mortgage underwriters;[15] and whether mortgage underwriters are classified as "exempt" and whether they are eligible for overtime.[16]

Unsurprisingly, plaintiff opposed this astoundingly broad request to seal the entirety of most of plaintiff's substantive exhibits.

**b.    Request to seal Exhibit 1.**

Defendant's request to seal will be denied, both on legal grounds and on factual grounds. As a legal matter, defendant's request to seal is improper under the standards articulated by the

_____

Yet, defendant itself has submitted evidence relating to compensation and incentives. See, e.g., Exh. L (Dougherty Decl.) (ECF No. 33-2 at 83-90) (disclosing the dollar amount of her salary, and the fact that she "can earn incentives for underwriting a certain amount of loans of good quality," and that "the incentive bonus is a reward for working extra hours to review additional files").

[15] Yet, defendant has submitted evidence relating to the performance expectations of mortgage underwriters. See, e.g., Exh. M (Flach Decl.) (ECF No. 33-2 at 91-98) (describing, among other things, how "[t]he quality of my underwriting factors into my performance evaluations," and that "I am not evaluated only on my productivity. I understand the quality of my underwriting to be a critical component of the job and I know U.S. Bank is evaluating it because it is in our performance evaluations").

[16] These are, of course, the key contentions of this case, and they are undisputed, yet defendant requests that the court seal the transcript portions relating to them.

Moreover, defendant itself has asserted that "U.S. Bank has classified them ['U.S. Bank's Mortgage Underwriters'] as exempt administrative employees." Opposition at 2. Further, defendant has provided evidence confirming that its mortgage underwriters are not paid overtime wages. See, e.g., Exh. N (Glatte Decl.) (ECF No. 33-2 at 99-106) ("I am paid the same base amount regardless of how many hours per week I actually work").

Ninth Circuit.  In its Request To Seal, defendant asserts that the documents ("95 pages total"), "<u>all</u> relate to U.S. Bank's internal underwriting and/or compensation policies, procedures, and practices." Request To Seal (ECF No. 23-1) at 3 (emphasis added). Based upon this assertion, defendant asserts that every page of most of plaintiff's substantive exhibits is protected from disclosure as "trade secrets," "proprietary information," and "information that U.S. Bank considers confidential" based upon the parties' stipulated Protective Order.

Defendant has thus failed to identify with any particularity which of the 95 pages is actually confidential and needs to be sealed, as required by the Ninth Circuit standards.  Instead, it has requested the sealing of all 95 pages of exhibits, without regard to the plainly non-confidential nature of most of them as described above.  Possibly worse, defendant seeks to seal <u>plaintiff</u>'s evidence regarding issues that <u>defendant</u> has produced evidence on.  In many cases, defendant's evidence is specific and detailed, yet it fully discloses it, while asking the court to seal the far more general discussion of the exact same thing, as submitted by plaintiff.

Given the opportunity to defend and narrow its request to seal, defendant refused to back down on Exhibit 1.  <u>See</u> Reply in Support of Request To Seal ("Seal Reply") (ECF No. 23-1) at 2. Instead, defendant asserts, for example, that the deponent testified about "the specifics of U.S. Bank's compensation policies." <u>Id.</u>, at 2.  This is problematic for at least two

reasons.   First, defendant does not identify where in deponent's testimony, these "specifics" are located.   Second, the court searches the transcript in vain for these "specifics."   Thus, the assertion is legally insufficient, and appears to be factually untrue.

The deposition transcript includes much <u>general</u> information about compensation: underwriters are paid a "base salary," and they may earn an "incentive," which may be a "bonus."   The most specific information about the incentive tells, in general terms, how the incentive is calculated, that is, how many loan files must be completed and in what time period, in order to earn the incentive.

In any event, nowhere in the deposition transcript is the amount of the salary disclosed,[17] nor the amount of any incentive, nor the amount of any bonus.   Defendant does not advise the court why any of the information disclosed in the deposition transcript is confidential.   Defendant, in its Reply, asserts that its "compensation structure" is confidential.   However it does not assert which information in the transcript discloses the compensation structure: is it that the bank pays its employees; that the mortgage underwriters are eligible for incentive pay; that the incentive pay is determined by a formula; or is it the formula itself?  Aside from the specifics of the formula itself, defendant has freely disclosed all of this, in its declarations opposing conditional certification.   These declarations disclose that the

---

[17] The declarations submitted by <u>defendant</u> disclose specific salaries of mortgage underwriters.

14

1    employees are paid a salary, that they are eligible for incentive

2    pay, and that the amount of the incentive depends on how many loans

3    they underwrite.[18]

4        By seeking to seal the entirety of this discussion, defendant

5    fails to identify with any particularity which portion of it is

6    really confidential.  If defendant wished to seal, for example, a

7    discussion of the specific formula used to determine incentive pay,

8    it should have made such a request.  It failed to do so, and

9    accordingly, Exhibit 1 will not be sealed.

10       Defendant makes a similar request to protect its "confidential

11   internal policies and guidelines."  But once again, it fails to

12   identify which portions of the deposition transcript discloses this

13   information.  The court will not guess which information defendant

14   is referring to.

15             **2.   The __entirety__ of Exhibit 2 (Janury 17 & 18, 2013**
                      **deposition transcript excerpts of plaintiff).**

16

17       Exhibit 2 consists of excerpts of two deposition transcripts

18   of Lisa Park.  These excerpts, which defendant asks this court to

19   seal in their entirety, include: the title pages, Attorney

20   Appearances page, exhibit list, jurat page, and the Reporter's

21   Certification page; the introductory pages, in which the deponent

22       [18] __See__ Beckfeld Decl. (ECF No. 33-2) ¶ 5 ("In addition to my
23   salary, I am able to earn incentives if I underwrite a certain
     amount of loans and the loans are of good quality"); Campbell Decl.
24   (ECF NO. 33-2) at 68 ¶ 5 (same); Crapser Decl. (ECF No. 33-2) at
     77 ¶ 5 (same); Daugherty Decl. (ECF No. 33-2) at 85 ¶ 5 (same);
     Flach Decl. (ECF No. 33-2) at 93 ¶ 7 (same); Glatte Decl. (ECF
25   No. 33-2) at 101 ¶ 5 (same); Jenkins Decl. (ECF No. 33-2) at 109
     ¶ 5 (same); Larson Decl. (ECF No. 33-2) at 118 ¶ 6 (same); Streff
26   Decl. (ECF No. 33-2) at 126 ¶ 5 (same).

states her name and that she is there to testify on behalf of
defendant; a discussion of the locations of certain cities and
towns – locations of defendant's branches – such as "Chicago,"[19]
"Los Alamitos" (California), "Denver" (Colorado), and "Portland"
(Oregon); the birthplace of plaintiff's counsel, and the
distinction between where counsel was "born," and where he is
"from;"[20] requirements and expectations of mortgage underwriters;
how mortgage underwriters are evaluated; whether the mortgage
underwriters are classified as "exempt," and whether they are
eligible for overtime pay; whether mortgage underwriters obtain
training; whether mortgage underwriters' hours are logged; a
discussion of the deponent's job; how fraud is detected and
addressed; mortgage underwriter compensation and incentive plans
(apart from the absence of overtime pay); specific programs used
for mortgage underwriter training; how defendant responds when
facing a payment default; mention of the existence of a quality
assurance department; and specifics of how an underwriting
assignment is carried out.

    This request is subject to the same weakness as discussed for
Exhibit 1.  Most of the discussion in the transcript is freely
disclosed elsewhere by defendant.  The court will not do the
defendant's job of separating out which portions of the transcripts
need to be sealed, from those that do not.  It may well be, for

---

[19] The deponent testifies that it is in Illinois.

[20] "I was [born in Edina] ... but I'm not an Edina guy."

1   example, that even the very general discussion about fraud
2   prevention could be subject to sealing.  However, defendant does
3   not ask that the general discussion on fraud be sealed, rather it
4   requests that <u>all</u> the transcript excerpts (and most of plaintiff's
5   other substantive exhibits) be sealed.  The court will not guess
6   which portions of the transcript defendant really has in mind.
7   Accordingly the request to seal Exhibit 2 will be denied.
8               **3.   Exhibits 3-5, 8.**
9       Exhibits 3-5 and 8 consist of employee incentive plans.
10  Plaintiff has not specifically opposed the request to seal these
11  exhibits (although they have objected to requests to seal the
12  deposition testimony in which these exhibits are discussed).  These
13  documents are not necessary for the court's decision on this motion
14  for conditional certification, and accordingly, the request to seal
15  them will be granted, without prejudice, and only with respect to
16  this motion.  That is, plaintiff may re-submit these exhibits, if
17  they are necessary for the court's decision on another matter, and
18  any subsequent request to seal them can be determined at that time.
19              **4.   Exhibits 6, 7 and 9.**
20      Exhibit 6 is an "Action Plan" for "Unsatisfactory
21  Performance," for a specific, named employee.  Exhibit 7 is a
22  "Performance Review" for a specific, named employee.  Exhibit 9 is
23  a company email regarding the job performance of a specific, named
24  employee.
25      Defendant apparently (and sensibly), no longer requests that
26  these exhibits be sealed in their entireties, and instead agrees

with plaintiff that "employee names in performance reviews and emails relating to job performance" should be redacted.  Defendants also request that any employee identification numbers be redacted. The court accordingly will deny the request to seal these documents in their entireties, and instead will direct plaintiff to redact all employee identification numbers from the exhibits.    In addition, plaintiff should redact all employee names where the employee is the <u>subject</u> of the document.  That is, there is no need to redact the names of the persons writing or receiving an email, or the person writing the Action Plan or the person writing the Performance Review.

**B.   Conditional Certification**

> **1.   The Prospective Class Members – Similarly Situated.**

The basics of plaintiff's initial showing are not in dispute. Defendant has classified all of its mortgage underwriters, the prospective class members, as "exempt," and has done so at least since 2009.  Rule 30(b)6 Dep. of U.S. Bank (Alan Leikmuehler) (January 17, 2013) ("Leimkuehler Depo.") / Exhibit 1, Pages 55 & 102.[21]  Also, the prospective class members are not eligible for overtime pay.  <u>Id.</u>, at Page 62.  As for the specifics of the administrative exemption, plaintiff has submitted sufficient evidence in support of her claim that the prospective class members are "similarly situated."

---

[21] The citations to the as-yet unfiled deposition transcripts refer to the page numbers at the bottom of the transcripts, reading "Exhibit ___, Page ___."

**a.   Are mortgage underwriters helping to run the business?**

An employee earning over $455 per week[22] is exempt as an "administrative" employee if her "primary duty" is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and her "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."   29 C.F.R. §§ 541.200(a)(2), (a)(3); cf. Miller v. Farmers Ins. Exchange (In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litigation), 481 F.3d 1119, 1127 (9th Cir. 2007) (citing the 2004 version of the regulation).

In turn, work is "directly related to the management or general business operations" if it is "directly related to assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a).  That is, the essence of the exemption is that the mortgage underwriters must be engaged in, or least assist in, "the running of a business," including the determination of "its overall course or policies." Bratt v. County of Los Angeles 912 F.2d 1066, 1070 (9th Cir. 1990) (interpreting an earlier version of the regulation), cert. denied, 498 U.S. 1086 (1991).  This does not include merely "the day-to-day carrying out" of the business's affairs.  Id.

Plaintiff has presented common proof of what defendant's

---

[22]  See 29 C.F.R. § 541.600(a) (exemptions apply only to employees "compensated on a salary basis at a rate of not less than $455 per week").

business is, as it relates to the mortgage underwriters.   The defendant's Form 10-K sets forth in excruciating detail what that business is.   <u>See</u> Declaration of Matthew C. Helland in Support of Plaintiffs' Motion for Conditional Certification ("Helland Decl."), Exh. 3 (ECF No. 29-3).   Plaintiff has also presented common proof – in the form of declarations and Rule 30(b)(6) depositions of defendant – of the mortgage underwriters' job duties, their day-to-day activities, their compensation, and how they are evaluated. At the level of scrutiny appropriate to this stage of the litigation, this evidence tends to show that the mortgage underwriters are not engaged in running the defendant's business. Rather, it tends to show that they are engaged in the day-to-day carrying out of the business of mortgage lending.

For example, plaintiff's evidence is that the decisions about who will get a loan is made by the defendant, through its lending guidelines and policies.[23]   The mortgage underwriters, according to plaintiff's evidence, compare the documentation they receive from a loan applicant against the guidelines and policies set out for them, to determine whether the loan applicant meets the requirements of the guidelines and policies.   On its face, this is evidence that the mortgage underwriters – all of them – are not engaged in running the business or setting underwriting policy, but

_____

[23] As defendant points out, the underwriters themselves are not of one voice on whether they have "final" say on granting or denying these loans.   However, it is undisputed that whether their say is final or preliminary, it is made only pursuant to the guidelines and policies set forth by defendant, and which they are required to follow.

simply carrying out the day-to-day determinations of whether Applicant A meets guidelines B, C and D.  See 29 C.F.R. § 541.704 ("The section 13(a)(1) exemptions are not available ... for employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances").[24]

Plaintiff's evidence includes declarations from prospective class member mortgage underwriters working in defendant's offices in North Dakota, California, Oregon and Colorado.  Each states, that her "primary job duty" is to ensure that "the loans that were approved by defendants were approved pursuant to various policies, procedures and guidelines."[25]  The Mortgage Underwriter Job Description plaintiff submitted also indicates that plaintiffs approve or deny loans "within certain limits," and sets out specific duties apparently applicable to all mortgage underwriters in the prospective class.  See Helland Decl., Exh. 8 ("Job Description") (ECF No. 29-12).

_____

[24]  However, "The use of manuals, guidelines or other established procedures containing or relating to highly technical, scientific, legal, financial or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills does not preclude exemption under section 13(a)(1) of the Act or the regulations in this part. Such manuals and procedures provide guidance in addressing difficult or novel circumstances and thus use of such reference material would not affect an employee's exempt status."  Id.

[25]  See ¶ 3 of the Declarations of Andreasen (ECF No. 28-3), Leiting (ECF No. 28-4), Trump (ECF No. 28-5), Miller (ECF No. 28-6), Conner (ECF No. 28-7), and Williams (ECF No. 28-8); Leimkuehler Depo. at 53.

1    According to plaintiff's evidence, the mortgage underwriters
2  follow the policies, procedures and guidelines applicable to their
3  work.   <u>See</u> Job Description (evaluates loan applications "in
4  accordance with industry and business unit standards;" develops
5  loan underwriting portfolio "consistent with the Bank's
6  guidelines").   The prospective class members do not create or
7  modify these policies, procedures or guidelines.[26]   They do not
8  price the loans.  Leimkuehler Depo. at 53.  They do not monitor the
9  loans' compliance with legal requirements.   Leimkuehler Depo. at
10 55.   They do not conduct post-closing audits of any loans.
11 Leimkuehler Depo. at 56.  Although there are different levels or
12 types of underwriters, they all apply the same guidelines.
13 Leimkuehler Depo. at 74.   While there is some "flexibility" or
14 "variance" in how the mortgage underwriters carry out their jobs,
15 "[a]s part of the day-to-day duties, the variance would be limited
16 to guidelines given to the underwriters." Leimkuehler Depo. at 21.
17 None of the prospective class members determine what type of loan
18 would be offered.  ECF Nos. 28-3 to 28-8.
19    The above evidence, taken from plaintiffs' declarations and
20 the defendant's Rule 30(b)(6) deposition, are sufficient to show
21 that the prospective class members are "similarly situated" in
22 respect to whether they are running a business, or simply engaged
23
24
─────────────────────

25    [26] <u>See</u> ¶ 3 of the Declarations of Andreasen (ECF No. 28-3),
   Leiting (ECF No. 28-4), Trump (ECF No. 28-5), Miller (ECF No. 28-
26 6), Conner (ECF No. 28-7), and Williams (ECF No. 28-8); Leimkuehler
   Depo. at 53.

1 in the day-to-day carrying out of the business.[27]

2                    **b.   Defendant's showing.**

3      Defendant opposes the motion based upon its assertion that it

4 has submitted declarations that say "the opposite" of what

5 plaintiff's declarations state.  Even if defendant were correct in

6 its assertion, it is not enough to rebut the plaintiff's showing.[28]

7      Defendant asserts that plaintiff is incorrect in asserting

8 that mortgage underwriters do not make "counter-offers."

9 Opposition at 10-11.   Rather, according to defendant,

10 "understanding the different types of loans U.S. Bank offers, and

11 suggesting alternatives where appropriate [making counter-offers],

12 was part of the Mortgage Underwriters' duties."   Id.

13      Defendant fails to explain, however, how making counter-offers

14 affects the determination of whether an employee is exempt.  For

15 example, is defendant arguing that an employee who makes a counter-

16 offer is running the business, or that she exercises discretion and

17 independent judgment, or both.  If defendant is arguing that it

18 shows discretion and independent judgment, then it is not relevant

19 to the task at hand, because plaintiff, at this point, has not

20 relied on that portion of the exemption.  Even if counter-offer

21

22      [27] Plaintiff makes no mention of the other two requirements
for the administrative exemption.  Since it will be defendant's
23 burden to establish that all three requirements are satisfied,
plaintiff is entitled to take this course, however risky.
24
      [28] In any event, defendant is not correct that its
25 declarations say "the opposite" of what plaintiff's say.  Defendant
has simply submitted declarations that put a different "spin" on
26 what plaintiff's declarants have said.

making demonstrates that mortgage underwriters exercise discretion and independent judgment, they are still not exempt if they are not engaged in the running of the business.

Even assuming there is a dispute here relating to the business and management portion of the exemption, it is irrelevant to the task of determining whether plaintiff has shown that mortgage underwriters are "similarly situated" for purposes of the administrative exemption.  All defendant has done is shown that some U.S. Bank mortgage underwriters <u>believe</u> that making counter-offers is one of their job duties, while others <u>believe</u> that it is not part of their job.[29]  However this "dispute" is resolved, it does not contribute to resolution of the critical question of what the mortgage underwriters' "primary duty" is.

Defendant does not assert that plaintiff's "primary duty" is making counter-offers, nor is there any evidence that it is. Whether an individual, cherry-picked job duty is or is not applicable to mortgage underwriters simply does not assist the court in determining whether they shared "primary" job duties.  In other words, even if an underwriter makes a counter-offer once each month, for example, and assuming that making counter-offers is an exempt job duty, if she spends the remaining 99% of her job doing

---

[29]  In any event, even if the court were simply to credit defendant's declarations and disregard plaintiff's allegedly contrary ones – even though there is no legal basis for doing so at this stage – then it would still be the case that the prospective class members were "similarly situated."  That is, they are similarly situated because they <u>do</u> make counter-offers when appropriate (rather than being similarly situated because they <u>do not</u> make counter-offers).

non-exempt work, then she is not exempt.  Thus, resolving the
esoteric question of whether the mortgage underwriters do or do not
make counter-offers is pointless without the information defendant
has failed to present: is this the mortgage underwriters' primary
duty?  Alternatively, does this, added together with other exempt
duties, comprise the mortgage underwriters' primary duty?  It
simply is not enough to identify isolated activities that a
mortgage underwriter might engage in.  The activities must be
exempt, and they must comprise the underwriter's primary duties.

Defendant appears to argue that 29 C.F.R. § 541.203(b) is
conclusive on whether mortgage underwriters are exempt or not.
However, that regulation only provides "examples" of employees in
the financial services industry who "generally" meet the
requirements for the administrative exemption.  This regulation may
be useful when, in due course, the court is called upon to rule on
the merits of the exemption.[30]  This motion, however, is about

---

[30] The regulation provides:

> Employees in the financial services industry generally
> meet the duties requirements for the administrative
> exemption if their duties include work such as
> collecting and analyzing information regarding the
> customer's income, assets, investments or debts;
> determining which financial products best meet the
> customer's needs and financial circumstances; advising
> the customer regarding the advantages and disadvantages
> of different financial products; and marketing,
> servicing or promoting the employer's financial
> products. However, an employee whose primary duty is
> selling financial products does not qualify for the
> administrative exemption.

29 C.F.R. § 541.203(b).

1   whether the class should be conditionally certified, not whether

2   plaintiff or defendant will ultimately prevail on the merits of the

3   lawsuit.

4       Defendant further asserts that the declarations contradict

5   each other on how mortgage underwriters are evaluated.  In fact,

6   there is no contradiction in the declarations.  Plaintiff's

7   declarations state that they are <u>eligible</u> for incentives if they

8   complete a certain number of loans, which is exactly what

9   defendant's declarations say.  Defendant's declarations go further,

10  however, and state that the loans must <u>also</u> be of a certain quality

11  to actually receive the incentive.  These statements are not

12  "opposite" or "contradictory."  Moreover, even if the court were

13  to accept defendant's declarations in full, and reject plaintiff's,

14  they would show that mortgage underwriters are "similarly situated"

15  in how they are evaluated.[31]

16      The remainder of defendant's arguments essentially attack

17  plaintiff's motion for failing to "prove" that the mortgage

18  underwriters were mis-classified as exempt.  Defendant's arguments

19

20

21      [31] Defendant also asserts that, according to the evidence,
    some mortgage underwriters are the final decisionmakers on loans,
22  while others are not, showing that they are not "similarly
    situated."  <u>See</u> Opposition at 12.  However, in the same brief,
23  defendant asserts that they are all final decisionmakers: "U.S.
    Bank's Mortgage Underwriters ... are the final decision-makers for
24  U.S. Bank."  Opposition at 6.  Defendant, in short, is arguing both
    that <u>all</u> mortgage underwriters are final decision-makers, and that
25  some are not.  Its "argument" here will be disregarded, although
    defendant is well advised to resolve its cognitive dissonance
26  before the court reaches the merits portion of this case.

1   fail  because,  first,  it  will  be  <u>defendant</u>'s  burden  (not

2   plaintiff's)  to  show  that  the  underwriters  were  properly  classified

3   as  exempt.  Second,  this  is  a  motion  for  conditional  certification,

4   and  the  court  is  not  called  upon  here  to  make  the  merits

5   determination  that  defendant  seeks.

6        Even  if  the  court  were  to  consider  contradictory  evidence  at

7   this  stage – which  the  cases  indicate  is  not  appropriate – there

8   simply  is  nothing  there  that  contradicts  plaintiffs'  evidence.  The

9   defendants'  evidence  simply  puts  a  different  "spin"  on  it.  For

10   example,  defendant  asserts  that  its  evidence  shows  that  mortgage

11   underwriters  engage  in  "'analyzing  loan  applications  to  determine

12   a  customer's  creditworthiness.'"  But  that  is  what  plaintiff's

13   evidence  shows,  just  phrased  differently.  Defendant  does  not

14   dispute  that  in  analyzing  loan  applications,  mortgage  underwriters

15   are  bound  by  the  bank's  guidelines.

16        **B.   Williams as Class Representative.**

17        Defendant  asserts  that  plaintiff  signed  a  severance  agreement

18   upon  leaving  U.S.  Bank  that  waived  "all  claims  upon  termination  of

19   her  employment."  Opposition  at  20.  However  it  appears  that  "an

20   individual  employee's  right  to  a  minimum  wage  and  to  overtime  pay

21   under  the  Act  [FLSA],"  is  "nonwaivable."  <u>Barrentine  v.</u>

22   <u>Arkansas-Best  Freight  System,  Inc.</u>,  450  U.S.  728,  740  (1981).  It

23   would  appear  therefore,  that  plaintiff's  "waiver"  is  of  no  legal

24   significance.

25        **C.   Notice**

26        Plaintiff  has  submitted  a  proposed  notice  to  potential  class

1   members.  <u>See</u> Proposed Notice (ECF No. 29-15).  Defendant has three

2   objections to the Proposed Notice.

3                    **1.   Warning that plaintiffs may be liable for costs and**
                          **counterclaims.**

4

5        Defendant argues that potential class plaintiffs should be

6   warned that they "may be held liable for costs associated with the

7   lawsuit and for potential counterclaims that could be asserted

8   against them."   Opposition at 20-21.   The only counterclaim

9   defendant identifies is something it calls "breach of the Release

10  of Claims" against an employee who signed a "Release of Claims."

11  However it appears that "an individual employee's right to a

12  minimum wage and to overtime pay under the Act [FLSA]," is

13  "nonwaivable."  <u>Barrentine</u>, 450 U.S. at 740.  Defendant does not

14  explain how it could have a counterclaim for "breach of Release of

15  Claim," even if such a cause of action otherwise exists, in light

16  of <u>Barrentine</u>.

17       As for costs of the lawsuit, plaintiffs' counsel represents

18  and states in a Declaration: "In my firm's fee agreements with

19  individual Plaintiffs, my firm has agreed to pay all costs imposed

20  on Plaintiffs, to the extent ethical rules allow.  We would not

21  pass these costs back on to individual Plaintiffs."   Reply

22  Declaration of Matthew C. Helland (ECF No. 35-1) ¶ 4.  Moreover,

23  defendant has not identified a single instance where an FLSA class

24  plaintiff has been taxed the costs of suit.  In light of this, it

25  appears that the proposed warning would have the sole effect of

26  chilling potential plaintiffs' participation in this lawsuit.

**2.   Limitations and Opt-In Period.**

Defendant argues that the notice be directed only to persons who are within the two-year statute of limitations, rather than the three-year period applicable to "willful" violations.  Defendant asserts that plaintiff has failed to establish an "evidentiary basis" for a willful violation in their motion.  Defendant offers no citation to any authority, nor any explanation for why a motion for conditional certification should include substantive evidence of a willful violation.  The defendant's objection appears without substantive justification and is overruled.  Plaintiffs have sufficiently alleged a willful violation in their complaint, and will be put to their proof at the appropriate time.[32]  The evidentiary burden plaintiffs have in this motion, is to show the court that the proposed plaintiffs are "similarly situated," a burden they have met.

Defendant also objects to the 90-day opt-in period, proposing instead a 60-day period, "which courts in this Circuit have found to be reasonable," citing two cases, one from the District of Nevada and one from the Northern District of California.  The objection, in other words, offers no independent reason the period should be reduced from 90 to 60 days, considering that some courts in this Circuit have approved 60 days, and others have approved 90

_____

[32] In any event, plaintiffs' evidence submitted in support of the motion for conditional certification clearly shows that defendant willfully declined to pay overtime wages to employees who worked overtime hours.  The question of whether this is lawful or not is the ultimate question to be decided by this court.

1   days.[33]   The objection is overruled.

2              **3.   Neutral third party administrator.**

3        Defendant reminds the court that "trial courts must take care

4   to avoid even the appearance of judicial endorsement of the merits

5   of the action." Hoffmann-La Roche, 493 U.S. at 174.   However,

6   defendant does not explain why the proposed notice would violate

7   judicial neutrality in this case.   The objection is overruled.

8   **IV. CONCLUSION**

9        For the reasons stated above:

10

---

11       [33] See, e.g., Gee v. Suntrust Mortg., Inc., 2011 WL 722111 at
    *4 (N.D. Cal. 2011) (in an FLSA collective action regarding
12  mortgage underwriters, the court approves a 90-day opt-in period
    for mortgage underwriters) (Seeborg, J.);   Ramirez v. Ghilotti
13  Bros. Inc., 2013 WL 1786636 at *7 (N.D. Cal. 2013) (Breyer, J.) (in
    a case involving laborers, the court authorized notice in English
14  and in Spanish, and rejected defendant's "proposed reduction of the
    opt-in period from 90 to 60 days"); Brewer v. General Nutrition
15  Corp., 2013 WL 100195 at *5 (N.D. Cal. 2013) (Rogers, J.)
    (regarding retail store employees, "[t]he opt-in period shall be
16  90 days from the date the notice is sent");   Collinge v.
    Intelliquick Delivery, Inc., 2012 WL 3108836, 3 (D. Ariz. 2012)
17  (Sedwick, J.) (regarding delivery drivers, the court rejected
    defendant's 30-day proposal, and plaintiff's 90-day proposal, and
18  concluded that "sixty days from the date of the notice is an
    appropriate opt-in period"); Sanchez v. Sephora USA, Inc., 2012
19  WL 2945753 at *6 (N.D. Cal. 2012) (Armstrong, J.) (regarding
    salespersons, "the Court finds that a notice period of sixty days
20  sufficiently balances both parties' concerns and is reasonable
    under the circumstances presented") (and collecting cases); Luque
21  v. AT&T Corp., 2010 WL 4807088 at *7 (N.D. Cal. 2010) (Breyer, J.)
    (regarding telephone company field managers, court approves a 60-
22  day opt-in period); Lewis v. Wells Fargo & Co., 669 F. Supp. 2d
    1124, 1126 (N.D. Cal. 2009) (Wilken, J.) (regarding bank's
23  information technology employees, court approved a 75-day opt-in
    period); Stanfield v. First NLC Fin. Svcs., LLC, 2006 WL 3190527
24  at *6 (N.D. Cal. 2006) (Armstrong, J.) (regarding loan officers,
    court approved 60-day opt-in period); Carrillo v. Schneider
25  Logistics, Inc., 2012 WL 556309 at *15 (C.D. Cal.) (180-day opt-in
    period appropriate for class of low-income migrant workers), aff'd
26  mem. on another issue, 501 Fed. Appx. 713 (9th Cir. 2012).

1          1.    Defendant's Request to Seal Exhibits 1 and 2, is

2   **DENIED**, and plaintiff shall file these documents, unredacted, in

3   the public docket no later than 21 days from the date of this

4   order;

5          2.    Defendant's Request to Seal Exhibits 3-5 and 8, is

6   **GRANTED**, as unopposed (that is, not on the merits), and without

7   prejudice to plaintiff's ability to re-submit them in connection

8   with another motion;

9          3.    Defendant's Request to Seal Exhibits 6, 7 and 9, is

10  **DENIED**, except to the degree that the request seeks the redaction

11  of the names of employees who are the subject of those performance-

12  related documents, and except to the degree that it seeks the

13  redaction of all employee identification numbers, and plaintiff

14  shall file redacted versions of these documents in the public

15  docket no later than 21 days from the date of this order;

16         4.    Plaintiffs shall file unredacted versions of their

17  memoranda and supporting documents in support of the motion for

18  conditional certification, retaining only such redactions, if any,

19  as are necessary to comply with this order;

20         5.    Plaintiff's motion for conditional certification is

21  **GRANTED**; and

22         6.    Plaintiff shall send its Notice of Collective Action

23  Lawsuit forthwith to all potential class members.  The notice shall

24  contain no advertising, commentary or any other material, other

25  than what is disclosed at ECF No. 29-15.

26  ////

1    IT IS SO ORDERED.

2    DATED:  June 20, 2013.

3

4

5                                    _____
                                     LAWRENCE K. KARLTON
6                                    SENIOR JUDGE
                                     UNITED STATES DISTRICT COURT
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26