1  Matthew C. Helland, CA State Bar No. 250451
Helland@nka.com
2  Daniel S. Brome, CA State Bar No. 278915
Dbrome@nka.com
3  NICHOLS KASTER, LLP
One Embarcadero Center, Suite 720
4  San Francisco, CA  94111
Telephone: (415) 277-7235
5  Facsimile: (415) 277-7238

6
7  Attorneys for Plaintiffs and those similarly situated

8                    UNITED STATES DISTRICT COURT
9                    EASTERN DISTRICT OF CALIFORNIA
10

11
12  KAREN WILLIAMS, SANDRA ADAMS,        No.  2:12-cv-01907-EFB
    LISA CRAWFORD, DEBRA DUDLEY,
13  KENNETH FREESTONE, CONNIE
    LEITING, MARIO MORA, JAMIE
14  NOONAN-SILVA, KIMBERLY               **NOTICE OF MOTION AND MOTION
    SEYMOUR, ERIC LUNN, VICTORIA         FOR FINAL SETTLEMENT APPROVAL**
15  CARLSON, and ALISON ANDREASON
    individually and on behalf of all others   Date:      March 18, 2015
16  similarly situated,                  Time:      10:00 a.m.
                                         Room:      8, 13th Floor
17           Plaintiffs,

18       v.

19  U.S. BANK NATIONAL ASSOCIATION
    and DOES 1-50, inclusive,
20
             Defendants.
21
22
23
24
25
26
27
28

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on March 18, 2015 at 10:0 a.m., in the courtroom of the

3    Honorable Edmund F. Brennan, Plaintiffs will and hereby do move this Court for final approval

4    of the Parties' Settlement Agreement and dismissing this action with prejudice. The grounds for

5    approval are set forth in the accompanying Memorandum of Points and Authorities; Defendant

6    does not oppose this Motion.

7

8    Dated: February 18, 2015            NICHOLS KASTER, LLP

9                                         By:    s/Matthew C. Helland
                                                  Matthew C. Helland
10
                                          Attorneys for Plaintiffs and those similarly situated
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF LAW AND POINTS OF AUTHORITIES ................................................. 1

I.     INTRODUCTION ........................................................................................................... 1

II.    PROCEDURAL AND FACTUAL HISTORY ............................................................... 1

    A.  Preliminary Approval of Settlement ..................................................................... 1

    B.  Distribution of Notice to FLSA Opt-ins, Rule 23 Class Members and
        Additional FLSA Claimants ................................................................................... 1

    C.  Allocation .............................................................................................................. 2

    D.  Objectors .............................................................................................................. 3

III.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE
      SETTLEMENT AND ENTER JUDGMENT ................................................................ 3

    A.  The Settlement is Fundamentally Fair, Adequate, and Reasonable ...................... 4

        1.  The strengths of Plaintiffs' case ..................................................................... 4

        2.  The risk, expense, complexity, and duration of further litigation ................. 6

        3.  The risk of maintaining class action status through trial .............................. 6

        4.  The amount offered in settlement .................................................................. 8

        5.  The extent of discovery completed and the stage of proceedings .................. 9

        6.  The experienced views of counsel .................................................................. 9

        7.  The views of class members ......................................................................... 10

    B.  The FLSA Settlement is a Reasonable Compromise of a Bona Fide Dispute ..... 10

    C.  Class Certification Should be Maintained for Settlement Purposes ................... 11

    D.  The Court Should Approve the Requested Attorneys' Fees and Costs ............... 11

        1.  The Court should use the common fund doctrine to award attorneys' fees ... 11

        2.  The Court should approve the request of 25% in attorneys' fees ................. 13

            i.    Quality of counsel ............................................................................... 14

            ii.   Benefits Obtained For The Class ......................................................... 14

            iii.  Complexity Of The Issues ................................................................... 15

            iv.  Risk Of Nonpayment ........................................................................... 16

            v.   Lodestar Cross-Check .......................................................................... 16

            vi.  Reasonableness of Fee Arrangement ................................................... 18

        3. The Court Should approve $22,885.87 in costs ........................................... 19

IV.   CONCLUSION ............................................................................................................. 20

MOTION FOR FINAL SETTLEMENT APPROVAL

**TABLE OF AUTHORITIES**

*Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964 (E.D. Cal. 2012).......................... 14, 17, 19

*Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ............... 6, 9-10, 12, 14, 17

*Blum v. Stenson*, 465 U.S. 886 (1984) ................................................................................ 11, 13

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)...................................................................... 11-12

*Bollinger v. Residential Capital*, 863 F. Supp. 2d 1041 (W.D. Wash. 2012) ............................ 5, 7

*Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879 (E.D. Cal. 2011) .............................. 17-18

*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) ........................................................ 11

*Covillo v. Specialty's Café*, 2014 WL 954516 (N.D. Cal. 2014) ............................................. 7, 10

*Davis v. J.P. Morgan Chase*, 587 F.3d 529 (2d Cir. 2009) ............................................................ 5

*Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351 (4th Cir. 2011) ............................. 5

*Duran v. U.S. Bank, NA*, 59 Cal. 4th 1 (2014) ........................................................................ 6, 15

*Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2014) ........................................... 18

*Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801 (E.D. Cal. 2012) ........................... 12, 17

*Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ................... 17-18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)............................................................. 4

*Harris v. Vector Marketing Corp.*, 2011 WL 44831157 (N.D. Cal. 2011)................................... 19

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) ........... 18-19

*In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992)............................................. 13

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005)....................................................... 16

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .................................................. 8

*Lutz v. Huntington Bancshares, Inc.*, 2014 WL 2890170 (S.D. Ohio, June 25, 2014)............... 5-7

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ............................................... 10

*Kakani v. Oracle Corp.*, 2007 WL 1793774 (N.D. Cal. 2007).................................................... 15

*Khanna v. Intercon Sec. Sys., Inc.*, 2014 WL 1379861 (E.D. Cal. 2014) .................................... 15

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367
(N.D. Cal. Feb. 2, 2009)................................................................................................................ 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)........... 6, 9-10

MOTION FOR FINAL SETTLEMENT APPROVAL

*Odrick v. UnionBancal Corp.*, 2012 WL 6019495 (N.D. Cal. 2012) ........................................... 20

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............................... 4-5

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ............................... 11, 13

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ......................................................................... 13

*Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................................................... 4

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................................. 11-13

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) .................................................... 12

*Torchia v. W.W. Grainger, Inc.*, 2014 WL 7399230 (E.D. Cal. 2014) ......................................... 16

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ................................... 12

*Velasco v. Mis Amigos Meat Market*, 2013 WL 5755054 (E.D. Cal 2013) ............................. 17-18

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................................. 11, 18

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999) ....................................... 14

MOTION FOR FINAL SETTLEMENT APPROVAL

**MEMORANDUM OF LAW AND POINTS OF AUTHORITIES**

## I.    INTRODUCTION

Named Plaintiffs Karen Williams, Sandra Adams, Lisa Crawford, Debra Dudley, Kenneth Freestone, Connie Leiting, Mario Mora, Jamie Noonan-Silva, Kimberly Seymour, Eric Lunn, Victoria Carlson, Alison Andreason and other individuals who have opted in to this action ("Plaintiffs") come before the Court requesting final approval of this class and collective action settlement. Over the previous two months, the Claims Administrator has provided notice of the settlement to class members, as outlined in the Court's preliminary approval order. (ECF No. 100.) Plaintiffs now request final approval so that payment may be distributed to Plaintiffs, and this case may be closed.

## II.    PROCEDURAL AND FACTUAL HISTORY

Plaintiffs supplement the factual and procedural history of this case already provided in their preliminary approval motion (ECF. No. 95), with a summary of the events since the Court granted preliminary approval.

### A.    Preliminary Approval of Settlement

On October 29, 2014, Plaintiffs and Defendant US Bank National Association ("Defendant") (collectively "the Parties") appeared before this Court requesting class certification (for settlement purposes only), and preliminary approval of this class and collective action settlement. Plaintiffs also requested leave to file their Second Amended Complaint which added claims for overtime pay under the Minnesota Fair Labor Standards Act, North Dakota Overtime Law, and violations of Ohio Minimum Wage Fair Wage Standards Act. The Court made a preliminary finding that the settlement is fair, reasonable, and adequate and granted the parties' request for certification of the settlement classes. (ECF No. 100 at 2.) The Court also approved the proposed notices to be distributed to class members and the proposed method of distribution. *See id.* The Court also ordered Plaintiffs to file their Second Amended Complaint, which they did on November 5, 2015. (ECF No. 101.)

### B.    Distribution of Notice to FLSA Opt-ins, Rule 23 Class Members and Additional FLSA Claimants

1    Pursuant to the Court's order, Defendant provided supplemental data to Class Counsel on

2    November 19, 2014. (Declaration of Amanda Myette ("Myette Decl.) at ¶ 9.) Class Counsel

3    provided the Claims Administrator, Rust Consulting, with the Notice Allocation on November

4    26, 2014. (*Id.*) The Claims Administrator distributed Settlement Notices and Claim forms listing

5    the minimum amount a Class Member would receive by accepting the settlement on December 3,

6    2014. (Myette Decl. at ¶ 11.) A reminder post card was sent to any Class Members who had not

7    yet responded to the Settlement Notice on January 2, 2015. (Myette Decl. at ¶ 13.)

8    Notices of Settlement and Consent to Join and Release forms were distributed to the 93

9    FLSA Opt-in Plaintiffs. Class Counsel were available to answer any questions from Plaintiffs

10   regarding the settlement, and made diligent efforts to obtain timely responses from each Plaintiff.

11   (Helland Decl. at ¶ 2.) Ultimately, 87 timely and complete claim forms returned to the Claims

12   Administrator, as well as one claim form that is currently incomplete, but which the Parties intend

13   to treat as valid. (Myette Decl. at ¶¶ 14-15; Helland Decl. at ¶ 4.)

14   Notices of Settlement and Consent Join and Release forms were distributed to the

15   California, Minnesota, North Dakota, and Ohio Rule 23 Settlement Classes. Notice was

16   distributed to 205 Rule 23 Class Members, and 128 have returned timely claim forms. (Myette

17   Decl. at ¶ 15.)

18   Notices of Settlement and Consent to Join and Release forms were distributed to 77

19   mortgage underwriters in Colorado, Kentucky, and Missouri (the "Additional FLSA Opt-ins).

20   The Claims Administrator received 42 timely claim forms (Myette Decl. at ¶ 15) and one

21   untimely claim form, which the Parties are treating as valid. (Helland Decl. at 4.)

22   In sum, the Claims Administrator distributed 375 Notices of Settlement, and 259

23   employees (69%) are participating in the settlement.

24   **C.   Allocation**

25   The Notice of Settlement and Consent to Join and Release forms advised class members

26   of their minimum settlement amount, noting that it may change depending on the number of

27   qualifying forms. After the close of the notice period, Class Counsel calculated the Final

28   Allocation, according to the formulas outlined in the settlement agreement. (Helland Decl. at 3,

Exh. A.) All Class Members will receive settlement amounts that are slightly larger (about 7 percent) than the amounts included in their individual notices.

Pursuant to the Settlement Agreement (ECF. 96-1), the Settlement Amount of $**3,031,075.29** is to be allocated as follows:

A total of $757,769.00 of the Settlement Amount (25% of the Settlement Amount) is allocated to Class Counsel's attorneys' fees pursuant to the Parties' Settlement Agreement (*Id.* at 29).

A sum of $22,885.87 is allocated to Class Counsel's costs pursuant to the Parties' Settlement Agreement (*Id.*).

A sum of $5,000.00 constitutes a Reserve Fund designed to effectuate the settlement, with any remaining amounts to be contributed to a legal aid organization as selected by agreement of Class Counsel and Defendant's Counsel. To date, one individual who was not part of the Settlement Class has asked to be involved in the case, to whom the Parties may make payment from the Reserve Fund. (Helland Decl. at ¶ 4.) The Parties will update the Court on the status of the Reserve Fund at the upcoming Fairness Hearing.

A total of $20,000.00 is allocated to the Claims Administrator for the cost of administering the settlement notice.

The remaining balance, $**2,225,420.60** is the amount to be distributed among the FLSA Opt-ins, Rule 23 Class Members, and Additional FLSA Opt-ins, pursuant to the allocation formula in the Settlement Agreement. (ECF. No. 96-1 at 15-18.)

### D.   Objectors

The parties have not received <u>any</u> written notice of any objections to the settlement.

### III.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AND ENTER JUDGMENT

In granting preliminary settlement approval, this Court found "preliminarily, that the proposed settlement is fair, reasonable and adequate." (ECF No. 100.) Since preliminary approval, notice has been distributed, almost seventy percent of eligible Class Members returned consent forms, and <u>zero</u> Class Members submitted objections or requests for exclusion. The

settlement will distribute considerable payments to Class Members, which represent very good value for the claims, particularly when compared with the uncertainty and risk of continued litigation. This Court should find, once again, that the settlement is fair, adequate, and reasonable and approve the settlement so that Class Members may receive their settlement payments.

### A.    The Settlement is Fundamentally Fair, Adequate, and Reasonable

The Ninth Circuit's standard of evaluation of the fairness, adequacy, and reasonableness of a settlement requires this Court to balance several factors:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). As outlined below, these factors support final approval of the settlement.

### 1.    The strengths of Plaintiffs' case

Defendant has asserted defenses that, were this case to proceed, would necessitate substantial litigation. Plaintiffs would need to support continued collective treatment, prove liability, and establish the amount of damages. Each of these issues was considered by the Parties and the mediator throughout the settlement discussions, and led to the negotiated settlement that Class Members have embraced.

The "fairness hearing is not to be turned into a trial or rehearsal for trial on the merits," and the task for this court is not "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Instead, the court may "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ." *Rodriguez v. West Publ'g. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Here, Defendants uniformly classified the collective class and Rule 23 class members as

exempt, and Plaintiffs believe that liability could be established on a class-wide basis. However, Plaintiffs would need to present evidence beyond the uniform classification to defeat Defendant's likely motion to decertify the FLSA collective. Those Class Members who had not previously opted-in (the Additional FLSA Opt-Ins and the Rule 23 Class Members in the settlement agreement) would face significant additional hurdles, not just to obtain class treatment, but to be included in the case at all.

Whether or not Plaintiffs maintained the collective and obtained certification of one or more Rule 23 classes, they would need to establish liability. Plaintiffs contend that leading cases show that mortgage underwriters are non-exempt employees, entitled to overtime. *See Davis v. J.P. Morgan Chase*, 587 F.3d 529 (2d Cir. 2009); *Bollinger v. Residential Capital*, 863 F. Supp. 2d 1041 (W.D. Wash. 2012). Defendant, on the other hand, has asserted that its mortgage underwriters are properly classified, and are distinct from those found to be nonexempt in other cases. Following a recent decision holding that mortgage underwriters were properly classified as exempt, liability is not a foregone conclusion. *See Lutz v. Huntington Bancshares, Inc.*, 2014 WL 2890170 (S.D. Ohio, June 25, 2014). Defendant has also asserted numerous other defenses, and asserts that some of the Plaintiffs have released various claims.

Assuming liability was established, Plaintiffs would also face obstacles in establishing damages. Defendant contends that damages are individualized and would not be susceptible to common proof. Defendant also contends that damages should be calculated using the fluctuating workweek method. *E.g., Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 356-57 (4th Cir. 2011). Even if Plaintiffs establish liability, these defenses could greatly reduce Plaintiffs' recovery.

Plaintiffs maintain their strong belief in the merits of the case, and have reached a resolution that recognizes the potential difficulties they would face in continued litigation. Particularly in complex employment class action litigation, voluntary settlement is the preferred means of dispute resolution. *Officers for Justice*, 688 F.2d at 625. While the District Court must review the fairness and reasonableness of the settlement, that determination is, ultimately, "nothing more than an amalgam of delicate balancing, gross approximations and rough justice."

*Id.* (internal quotation omitted). The proposed settlement balances the strengths and weaknesses of the Parties' positions on class treatment, liability, and damages for several groups of underwriters, while providing significant recovery for Class Members. This factor weighs in favor of settlement approval.

### 2. The risk, expense, complexity, and duration of further litigation

This case has been marked by drawn-out, and at times contentious, litigation.  Given that this case has been pending for over two years already, there is a high likelihood that the next steps of litigation would have been expensive, complex, and protracted. Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Had this case not settled, Plaintiffs would have pursued their summary judgment motion, which becomes more difficult in light of the recent decision in *Lutz.* 2014 WL 2890170, at *20 . If Plaintiffs did not prevail on summary judgment, the Parties would have conducted nationwide discovery, likely leading to a decertification motion from Defendant. Defendant's exemption defense would have been resolved at trial. Wage and hour trials are complex, expensive, and unpredictable. If Plaintiffs were to prevail on liability, Defendant would likely appeal. Absent this settlement, payment for Class Members would have been uncertain, and would have taken dramatically longer.

By way of example, a wage and hour case against Defendant U.S. Bank, filed in December 2001 resulted in a substantial verdict for the plaintiffs in September 2008, but which was reversed almost six years later by the California Supreme Court. *See Duran v. U.S. Bank, NA*, 59 Cal. 4th 1, 14 (2014).

This settlement avoids expenditures of resources for all parties and the Court, and provides "significant benefit that [Class Members] would not receive if the case proceeded—certain and prompt relief." *Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013). This factor therefore supports final approval of the settlement.

### 3. The risk of maintaining class action status through trial

MOTION FOR FINAL SETTLEMENT APPROVAL

The Parties agree that this case is appropriate for settlement on a class-wide basis. However, Plaintiff's First Amended Complaint did not include Rule 23 state law classes. When the Parties mediated this case, the amendment deadline had passed. (*See* ECF No. 56.) Litigating those claims, therefore, would mean either obtaining relief from the scheduling order and moving to amend, or filing a distinct tag-along lawsuit. This settlement provides significant benefits for Rule 23 Class Members by including their claims in this litigation while avoiding the risk of a motion to amend and the risks and burdens of additional or subsequent litigation. Similarly, the Additional FLSA Opt-ins would have no avenue to join this litigation. Without this settlement, the only way for them to assert their claims would be to file a new case. Given that they previously received notice of this case and declined to participate, it is highly unlikely that the Additional FLSA Opt-ins would have been in a position to obtain <u>any</u> relief. By including them here, this settlement provides a significant benefit to the group, promotes consistent treatment for underwriters, and avoids continued litigation over who can participate in this matter.

Moreover, Defendant vigorously opposed Plaintiffs' motion for conditional certification and would have opposed Rule 23 certification. If the Rule 23 subclasses were certified in a subsequent case, Plaintiffs would face significant burdens simultaneously litigating under four distinct state laws as well as the FLSA. Given the divergent treatment that mortgage underwriters have obtained in different courts, achieving nationwide relief through this settlement is particularly advantageous for Rule 23 Class Members. *Compare Bollinger*, 863 F. Supp. 2d 1041, *with Lutz*, 2014 WL 2890170.

Additionally, Defendant could have brought a motion to decertify the FLSA collective in this case. Plaintiffs contend that collective treatment through trial would be appropriate, but recognize the inherent risk in litigation. If Defendant had been successful in this pursuit, Plaintiffs would have been required to litigate their claims in several district courts around the country. Even if Defendant was not successful in a decertification bid, that motion would entail substantial discovery burdens on individual Plaintiffs, and additional delays. "[I]t is indisputable that further litigation would be time-consuming and expensive for both sides." *Covillo v. Specialty's Café*, 2014 WL 954516, at *5 (N.D. Cal. 2014). It would be almost impossible to proceed to trial with a

1    group of the same scope that is included in this agreement. Even maintaining collective treatment

2    for the current FLSA Opt-ins is not without risk. This factor therefore favors settlement approval.

3    **4.    The amount offered in settlement**

4    The total settlement amount, $3,031,075.47,[1] will bring substantial relief to the class

5    members. The average settlement payment, *after* attorneys' fees and costs, is over $8,500.00;

6    thirty-six Class Members will receive an allocation of over **$15,000.00**. (Helland Decl. ¶ 3, Exh.

7    A.) As described in the Motion for Preliminary Approval, the settlement was allocated based on

8    objective inputs. Damages were calculated for each individual Class Member using Defendant's

9    payroll records and an assumption that each Plaintiff worked 50 hours per week. (Helland Decl. at

10   ¶ 5.) Because it is based on individual earnings, the settlement gives the greatest payment to

11   workers with the largest potential claims.

12   The "essence of a settlement is compromise, a yielding of absolutes and an abandoning of

13   highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). The

14   settlement allocation here is fair and reasonable: it provides substantial payments, treats Class

15   Members fairly, and it has been embraced by Class Members.

16   First, the settlement appropriately weights claims between the three settlement groups (the

17   FLSA Opt-Ins, the Rule 23 Class Members, and Additional FLSA Opt-Ins). FLSA Opt-Ins

18   affirmatively chose to assert their claims in this litigation. They subjected themselves to the

19   inconvenience and stigma of litigating against an employer.  Similarly, the Named California

20   Plaintiffs affirmatively chose to assert their individual state law claims.  These individuals were

21   not merely part of a class; they put their name on a lawsuit against U.S. Bank.  Rule 23 Class

22   Members and Additional FLSA Opt-Ins, on the other hand, chose *not* to assert their claims in this

23   suit, and they had not asserted claims anywhere prior to this settlement.  Outside of this

24   settlement, Rule 23 class members' only avenue to recover would be through a follow-along state

25   

26   [1] The amounts described herein include payment (and corresponding attorneys' fees) for one
     individual whose consent form was received late, and one individual whose consent form was

27   deficient at the time this motion was filed. US Bank has indicated that it does not object to these
     payments.

28

law class action.  Additional FLSA Opt-Ins would have to file suit individually, or affirmatively opt into a later case.  Since they already declined participation once, it is appropriate that their claims should be reduced to account for the risks associated with their potential litigation. Importantly, Class Counsel reviewed and analyzed payroll data for all Rule 23 Class Members and Additional FLSA Opt-Ins in conjunction with mediation.  (Helland Decl. ¶ 5.)  Class Counsel analyzed potential damages in conjunction with the risk of loss to Class Members.

The settlement amount also supports approval because the Final Allocation calls for the distribution of over $2,225,000 to participating class members. (Helland Decl. Exh. A.) This is a substantial sum that adequately recognizes Class Members' damages, and compensates them appropriately. The individual allocation amounts are substantial, and favor settlement approval.

The responses from Class Members illustrates that the settlement amount is reasonable. *See Barbosa*, 297 F.R.D. at 447 (noting that the lack of objections, and single request to opt-out of agreement.) In *Barbosa*, 58% of the eligible class members participated, compared to 69% participation here. *See id.* at 447-48.

Given the substantial dollar amount, objective formula used in allocating payment, and overwhelmingly positive response from the Class Members, the settlement amount weighs strongly in favor of settlement approval.

### 5.    The extent of discovery completed and the stage of proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV*, 221 F.R.D. at 528. As described in Plaintiffs' motion for preliminary approval, the Parties engaged in substantial discovery and in depth arms-length negotiation in mediation. (ECF No. 95-1 at 15). The amount of discovery has been more than sufficient for counsel to act intelligently in evaluating the case and the benefits of settlement. *See Barbosa*, 297 F.R.D. at 447. This amount of discovery supports the finding that the Settlement is fair and reasonable.

### 6.    The experienced views of counsel

Class Counsel's experience is outlined in Plaintiffs' preliminary approval motion. (ECF No. 95-1 at 9-10). As noted there, Class Counsel have extensive experience in nationwide wage

and hour litigation. Counsel for all parties agrees that the settlement is fundamentally fair, adequate, and reasonable. This settlement agreement is the result of arms-length negotiations, between experienced counsel representing the interests of the plaintiffs and defendant, facilitated by a skilled mediator, after thorough factual and legal investigation. The Court can, "and should, rely upon the judgment of experienced counsel for the parties," and hold that this settlement is fair and reasonable. *Barbosa*, 297 F.R.D. at 447 (citing *DIRECTV*, 221 F.R.D. at 528.)

### 7.    The views of class members

The reaction of the class strongly supports approval. Of the 375 Class Members, not one objected to or sought to exclude themselves from the Settlement. (Myette Decl. at ¶¶ 16-17.) The Claims Administrator has received consent forms from over 69% of the Class Members. (*Id.* at ¶ 15.) All but five of the FLSA Opt-ins have returned consent forms. (Helland Decl. at ¶ 2.) This rate of participation, and the lack of objection or rejection to the agreement weighs heavily in favor of final approval. *Covillo*, 2014 WL 954516, at *6 (38% participation with no objections and no opt-outs "strongly favors approval").

### B.    The FLSA Settlement is a Reasonable Compromise of a Bona Fide Dispute

Settlement of FLSA claims for back wages are also subject to court approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Court approval is favored "to promote the policy of encouraging settlement of litigation," where the settlement reflects a "reasonable compromise over issues" that are "actually in dispute." *Id.* at 1354. Plaintiffs' position on numerous disputed issues was laid out in the Motion for Summary Judgment, which demonstrates that these issues were "actually in dispute." (ECF No 86.) As described above, this settlement reflects a "reasonable compromise" on numerous issues, including: Class Members' regular rates of pay; Class Members' entitlement to overtime; the appropriate method for calculating overtime; the number of overtime hours worked; the appropriate statute of limitations; and the availability of liquidated damages. Accordingly, the Settlement satisfies the *Lynn's Food* standard, which is less rigorous than the Rule 23 approval standard, and the Court should approve the settlement of the FLSA claims.

### C.   Class Certification Should be Maintained for Settlement Purposes

The Court certified the Rule 23 Classes in its Order preliminarily approving the settlement. (ECF No. 100.) Since that Order, nothing has changed about the groups of mortgage underwriters who were certified as settlement classes. Plaintiffs therefore incorporate their briefing on the propriety of class certification contained in the Motion for Preliminary Settlement Approval (ECF No. 95-1), and ask that the Court maintain certification of the Rule 23 Classes.

### D.   The Court Should Approve the Requested Attorneys' Fees and Costs

#### 1.   The Court should use the common fund doctrine to award attorneys' fees

For well over a century, federal and state courts have recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund… is entitled to a reasonable attorney's fee from the fund as a whole"); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) (recognizing common fund doctrines); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (same).

The common fund doctrine rests on the understanding that, in class action litigation, many class members benefit from the common fund, but they may not have played a large role in the litigation that led to the fund. *Van Gemert*, 444 U.S. at 478. To avoid unjustly enriching some class members, attorneys' fees are assessed against the entire fund, "thus spreading fees proportionately among those benefited by the suit." *Id.* Awarding a percentage of the total fund is routinely approved as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 900, n. 16 (1984); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("We conclude that the district court considered the relevant circumstances and did not abuse its discretion in finding a 28% fee award to be reasonable under the percentage method.")

-11-

1    Fees from a common fund are particularly appropriate where, as here, "each member of a

2    certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum

3    judgment recovered on his behalf." *Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003)

4    (quoting *Van Gemert*, 444 U.S. at 479); *accord Barbosa* 297 F.R.D. at 448 ("Here, the Settlement

5    Agreement applies a formula pursuant to which each Class Member will receive a mathematically

6    ascertainable payment; application of the percentage of the common fund doctrine is

7    appropriate."); *Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801, at *15 (E.D. Cal. 2012)

8    ("the Settlement applies a distribution formula pursuant to which each Class Member . . . will

9    receive a mathematically ascertainable payment, application of the percentage of common fund

10   doctrine is appropriate.") *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal.

11   2010) (where settlement agreement "applies distribution formulas pursuant to which each Class

12   Member who submits a valid claim will receive a mathematically ascertainable payment,

13   application of the percentage of common fund doctrine appropriate.")

14   The percentage of the fund method is appropriate for a number of well-recognized

15   reasons. One of the most important reasons is that the percentage method accomplishes fee

16   spreading in a manner that comports with the legal marketplace, where counsel's success is

17   frequently measured in terms of the results counsel has achieved. *See Swedish Hosp. Corp. v.*

18   *Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the

19   victory is often the true measure of [counsel's] success"); *Viscaino*, 290 F.3d at 1047

20   (recognizing that "the size of the recovery constitutes a suitable measure of the attorneys'

21   performance") (internal quotations omitted). By assessing the amount of the fee in terms of the

22   amount of the benefit conferred on the class, the percentage method "more accurately reflects the

23   economics of litigation practice" which, "given the uncertainties and hazards of litigation, must

24   necessarily be result-orients." *Swedish Hosp. Corp*, 1 F.3d at 1269. (internal quotation marks and

25   citation omitted).

26   Further, when clients do not pay an ongoing hourly fee to their counsel, they typically

27   negotiate an agreement in which counsel's fee is based upon a percentage of any recovery. The

28   percentage of the fund approach mirrors this aspect of the market and, accordingly, reflects the

-12-

fee that would have been negotiated by the class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g., Paul, Johnson, Alston & Hunt*, 886 F.2d at 271 ("it is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit"); *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (in a common fund case, the object "is to give the lawyer what he would have gotten in the way of  a fee in an arm's length negotiation, had one been feasible").

Here, the common fund method is appropriate because Class Counsel has secured a settlement with a common fund of $3,031,075.29, which will be shared by a class of approximately 259 people. The settlement agreement provides a mathematical distribution, awarding each Class Member an ascertainable amount, making a common fund fee award particularly appropriate. *Staton*, 327 F.3d at 972. Furthermore, many of those in the class do not have formal attorney-client agreements with Class Counsel, and it is appropriate that an award of fees should be shared by each class member who receives benefit from the settlement. In fact, those who <u>do</u> have fee agreements (approximately half of the FLSA Opt-ins) agreed that attorneys' fees would be measured as one-third of a settlement. (Helland Decl. at ¶ 18.) Because Class Counsel seeks fees at the Ninth Circuit benchmark of 25%, these Class Members are benefiting and paying a lower rate of fees than was agreed to.

The common fund is also appropriate because Class Counsel took this case on a contingency basis. *See, e.g., Blum*, 465 U.S. at 900 n. 16. Because Plaintiffs and class members did not pay Class Counsel during the course of this litigation, Class Counsel alone bore the risk that the litigation would be unsuccessful. It is therefore appropriate that an award of attorneys' fees would mirror the fee that Class Counsel might be paid in a contingency arrangement negotiated with individual plaintiffs. *See In re Continental Illinois Sec. Litig.*, 962 F.2d at 572.

### 2.    The Court should approve the request of 25% in attorneys' fees

In the Ninth Circuit, the typical range of attorneys' fee awards from a common fund recovery is 20 to 33.3 percent, with 25 percent considered the benchmark. *Powers v. Eichen*, 229

F.3d 1249, 1256 (9th Cir. 2000). "[I]n most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009). Courts in this district routinely approve fee awards in common fund cases of over 30%. *Barbosa*, 297 F.R.D. at 450 (approving fee award of 33%, and collecting nine recent wage and hour cases approving fee awards of 30-33.3%). Here, Class Counsel seeks attorneys' fees from the common fund at the benchmark amount of 25%, pursuant to the Parties' Settlement Agreement.

A departure from the 25 percent benchmark must be accompanied by a reasonable explanation "based on circumstances in the record." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012). The factors to be considered when departing from the 25% benchmark include: quality of representation, the benefits obtained for the class, the complexity of the issues, and the risk of nonpayment. *Id.* This case entailed substantial discovery and protracted litigation focused on specialized legal issues, and resulted in significant settlement payments and a high rate of participation. Given these results, attorneys' fees at the benchmark of 25% are easily justified. Class Counsel requests $757,769.00, or 25% of $3,031,075.29 in fees. None of the above-listed factors warrant a downward departure from the benchmark in this case.

*i.      Quality of counsel*

Class Counsel's experience is outlined at ECF Nos. 95-1 and 96-3. Class Counsel has substantial experience in representing employees in class and collective actions, especially those under the Fair Labor Standards Act. Class Counsel has secured an excellent result for Plaintiffs here. Class Counsel's expertise in this area of law does not support a downward departure in fees.

*ii.      Benefits Obtained For The Class*

This is a substantial settlement that provides significant value to class members.  The payment of actual and substantial damages to class members is to be contrasted with other cases in which requests for attorneys' fees have been denied or reduced. For example, in *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999), class counsel requested almost $3,000,000 in fees, despite not securing any actual damages payable to class members. Here, the significant payments that Plaintiffs will receive support the approval of Plaintiffs' attorneys' fees

1  request.

2       Also, in contrast to *Kakani v. Oracle Corp.*, 2007 WL 1793774 (N.D. Cal. 2007), this is

3  not a "claims made" settlement. Each dollar that is allocated to be distributed to class members

4  will end up either in class members' hands or in a C*y Pres* fund. Counsel's percentage of the

5  common fund is based on a percentage of actual payout, not some fictitious amount that will

6  never actually reach class members.

7       This case has resulted in a settlement with substantial monetary awards for participating

8  claimants – averaging over $8,500 per Class Member. This amount easily supports a fee award at

9  25% of the common fund. *See Khanna v. Intercon Sec. Sys., Inc.*, 2014 WL 1379861, at *12 (E.D.

10 Cal. 2014) (average recovery in overtime case of approximately $4,000 per claimant was

11 "favorable . . . but not extraordinary" and did not justify departing from the benchmark.)

12      Further, Class Counsel has not concealed the fees it would be requesting as a part of this

13 settlement. The fee distribution was outlined clearly in the settlement agreement granted

14 preliminary approval by this Court, which was available for all class members to review. The

15 total amount of the settlement and the amount that would be distributed to class members after

16 fees and costs were deducted were clearly outlined on the Court-approved notices that were

17 distributed to Rule 23 and FLSA class members.  The Notices informed Class Members that

18 Class Counsel would seek to recover 25% of the total settlement amount. The parties have not

19 received an objection to Class Counsel's fees.

20                          *iii.    Complexity Of The Issues*

21      Wage and Hour class actions are often complex, protracted litigation.  This case was no

22 different. Overtime claims based on misclassification are not obscure, but they do require

23 specialized legal knowledge, and they have unique client and case management demands. The

24 parties engaged in contentious early motion practice, and the hard fought litigation certainly

25 would have continued if the parties were unable to resolve the case. *See Duran*, 59 Cal. 4th at 1-

26 20 (describing the lengthy ordeal of litigating wage and hour class action against U.S. Bank

27 through trial and appeal, and reversing trial verdict.) There is nothing simple or easy about this

28 case which would justify a departure from the 25% benchmark.

MOTION FOR FINAL SETTLEMENT APPROVAL

*iv.    Risk Of Nonpayment*

Class Counsel bore a significant risk of nonpayment in this case. Because Class Counsel took the case on a contingency fee arrangement, Class Counsel alone bore the risk of nonpayment. (Helland Decl. ¶¶ 18-23.) Class Counsel advanced all costs, and would have paid an adverse award of costs. (*Id.* at ¶¶ 18, 23.) Class Counsel has not received any payment for the work performed over the past two years on this case. (*Id.* at ¶ 19.) Had the litigation been unsuccessful, Class Counsel would not have received any compensation for their time. (*Id.*) Contingency litigation has risks beyond the potential for an adverse ruling: even where plaintiffs prevail, an employer bankruptcy can prevent recovery. (*Id.* at ¶ 21.) Class Counsel took this case on a contingency basis, with no guarantee of success and no indication of an early settlement. (Id. at ¶¶ 20, 22.) Class Counsel should be compensated for taking on this risk.

*v.    Lodestar Cross-Check*

Courts awarding fee based on a percentage of the common fund often "cross-check" the fees compared to the lodestar method. A "lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *Torchia v. W.W. Grainger, Inc.*, 2014 WL 7399230, at *25 (E.D. Cal. 2014) (*quoting In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306 (3d Cir. 2005).

Here, Plaintiffs calculate that their fees under the lodestar method would be $281,822.50. (Helland Decl. at ¶ 6.) That amount is based on more than 830 hours of billable work, and hourly rates ranging from $175 for paralegals and other support staff to $550 for the senior partner. (Helland Decl. at ¶¶ 7-15.) Because these hours are reasonable for a case of this magnitude, and the rates are reasonable in light of rates awarded in comparable matters in this District, Plaintiffs' lodestar should be accepted. Further, because the a multiplier sought (2.69) is within the typical range in the Ninth Circuit, the lodestar cross-check supports Class Counsel's request for fees at 25% of the common fund.

<u>Reasonable Hours</u>

Class Counsel has spent approximately 830 hours on this litigation so far. That amount includes time spent communicating with hundreds of Plaintiffs and Class Members, reviewing

-16-

1  voluminous pay records, preparing for and conducting depositions, litigating conditional

2  certification, preparing a motion for summary judgment, mediating and negotiating a broad

3  settlement, and obtaining preliminary settlement approval. (Helland Decl. at ¶ 7.)

4      These hours are more than reasonable when compared to other wage and hour cases. For

5  example, in *Barbosa*, the court found 970.7 hours to have been reasonably expended on the

6  litigation. 297 F.R.D. at 451-52. However, it does not appear that that case included a contested

7  conditional certification motion, or a fully-briefed summary judgment motion. *Id.* at 436

8  (describing procedural history). Other wage and hour cases in this District approved significantly

9  higher amounts of time. *See Adoma*, 913 F. Supp. 2d at 983-84 (1760 hours found reasonable);

10  *Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801, at *19 (E.D. Cal. 2012) (1,345.7 hours

11  "reasonable in light of the legal issues and the amount of discovery conducted, the number of

12  Defendant's employees included in the Settlement Classes, the mediation preparation required,

13  and motion practice with respect to the Settlement Agreement"); *Garcia v. Gordon Trucking,*

14  *Inc.*, 2012 WL 5364575, at *8 (E.D. Cal. Oct. 31, 2012) (approving 3,070.23 hours).

15      Here, given the complexity of the issues, the scope of litigation, the size of the class, and

16  the amount of recovery, Counsel's expended hours are more than reasonable.

17      <u>Reasonable Rates</u>

18      Prevailing hourly rates in the Eastern District "are in the $400 range, with rates of up to

19  $650 to $675 approved for partners and senior associates with significant years of experience."

20  *Barbosa*, 297 F.R.D. at 452. *See also Garcia*, 2012 WL 5365475, at *9 ("prevailing rates in the

21  Eastern District of California are in the $400/hour range," and approving lodestar based on rates

22  up to $650 per hour); *Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879, at *11-13 (E.D.

23  Cal. 2011) (approving attorney rates ranging from $262 to $675); *Velasco v. Mis Amigos Meat*

24  *Market*, 2013 WL 5755054, at *12, n. 4 (E.D. Cal 2013) (recommending grant of default

25  judgment and finding the rates charged by attorneys, ranging from $395 for a "junior associate"

26  to $650 for partners, to be reasonable); *Adoma*, 913 F. Supp. 2d at 984 (approving hourly rate of

27  $425 based on awards in other parts of California, and emphasizing that to "insist on awarding

28  significantly-lower hourly rates in the Eastern District than those in the other judicial districts in

-17-

1  California would discourage attorneys from bringing meritorious lawsuits in this district.")

2  Here, the rates charged by Class Counsel are reasonable and are in line with those

3  approved in this District in *Barbosa, Garcia, Bond,* and *Velasco.* Specifically, Matthew Helland,

4  the partner responsible for the bulk of the work on this case, bills at $525 per hour; associate time

5  was billed at $300-$350; non-attorney time was billed at $175. (Helland Decl. ¶¶ 7, 13-14.) These

6  rates are consistent with recent cases awarding fees from a common fund and applying the

7  lodestar cross-check.

8  <u>Reasonable Multiplier</u>

9  Based on the Plaintiffs' calculated lodestar ($281,822.50), the fees sought represent a

10  multiplier of 2.69. This is "within the Ninth Circuit's presumptively acceptable range of 1.0–4.0.

11  *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (approving multiplier of

12  2.83 in case seeking unpaid commissions for home mortgage employees based on "the

13  complexity and duration of this litigation, the results obtained for the class, and the risk counsel

14  faced in bringing the litigation") (*citing Vizcaino,* 290 F.3d at 1051 & n. 6).

15  To determine whether that multiplier is appropriate, courts may consider a variety of

16  factors, including: the amount involved and the results obtained, the novelty and difficulty of the

17  questions involved, the skill requisite to perform the legal service properly, the customary fee,

18  whether the fee is fixed or contingent, the 'undesirability' of the case, and awards in similar cases.

19  *Garcia*, 2012 WL 5364575, at *9. As discussed above, this case entailed difficult litigation, and

20  resulted in significant benefit to the class. The fee was entirely contingent, and the multiplier, as

21  well as the absolute value of the fee requested, are in line with comparable recent cases from this

22  District. Accordingly, the multiplier, which is well within the presumptively reasonable range,

23  supports awarding fees based on the common fund, as set out in the settlement agreement.

24  *vi.   Reasonableness of Fee Arrangement*

25  It is also appropriate for the court to evaluate the fee arrangement in light of the Ninth

26  Circuit's decision in the *In re Bluetooth Headset Products Liability Litigation.* 654 F.3d 935, 947

27  (9th Cir. 2011). The *Bluetooth* court identified three factors which may indicate that an attorneys'

28  fee settlement is not fair, adequate, and reasonable: (1) whether class counsel receives a

-18-

disproportionate distribution of the settlement; (2) whether the parties negotiate a "clear sailing" arrangement providing that the defendant will not object to a request for attorneys' fees from the common fund; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id.*

Here, the first and third factors strongly suggest that the attorneys' fee payment here is fair and reasonable. The attorneys' fees are 25% of the common fund, which is presumptively reasonable. *Adoma*, 913 F. Supp. 2d at 984 (29% of common fund reasonable, in contrast with *Bluetooth*, where class counsel sought $800,000 in fees despite no monetary recovery for the class, and *Harris v. Vector Marketing Corp.*, where the agreement called for payment to the class of approximately $1 million and payment to class counsel of **$4 million.** 2011 WL 44831157 (N.D. Cal. 2011)). While Defendant has agreed not to contest the requested attorneys' fees, that factor is not dispositive. *See id.* (clear sailing provision did not prevent finding that settlement was fair, adequate, and reasonable). Finally, the settlement here is clear that "[i]n the event that the Court (or any appellate court) awards less than the amount requested for attorneys' fees and/or costs, any amount disallowed by the Court will be reallocated on a pro rata basis to participating settlement class members. No amount shall revert to Defendant." Agreement at § 5.9.3. Accordingly, under the *Bluetooth* factors, the agreed attorneys' fee payment is fair, reasonable, and adequate, and should be approved by the Court.

Class Counsel seeks attorneys' fees equal to 25% of the common fund. This is the benchmark amount in the Ninth Circuit, and no circumstances justify a departure. The lodestar cross-check supports this amount, because it produces a multiplier that is in line with Ninth Circuit standards and reasonable in light of the results in this case. There is no evidence of collusion, and the attorneys' fees are reasonable in light of *Bluetooth*. Under all of the applicable standards, the fees sought are reasonable, and this Court should grant final approval to the fees as set out in the settlement agreement.

### 3. The Court Should approve $22,885.87 in costs

Per the terms of the settlement agreement Class Counsel is requesting approval of $22,885.87 in costs. Payment of these costs is already factored into the allocation which has been

communicated to Plaintiffs. Class Counsel has incurred approximately $22,886.00 in unreimbursed costs during this litigation, which it advanced on behalf of Plaintiffs and the Class. (Helland Decl. ¶ 23, Exh. B.)   Class counsel will incur additional costs in finalizing the settlement.  Class Counsel requests, and Defendants do not oppose, reimbursement of $22,886.00 in costs.

This amount is also consistent with costs awarded in comparable matters. For example, in a recent misclassification case against a large bank, the court approved $20,351.71 in costs where the settlement (totaling $3,500,000) was reached very early in litigation, with little discovery and minimal motion practice prior to settlement. *Odrick v. UnionBancal Corp.*, 2012 WL 6019495, at *2-6 (N.D. Cal. 2012).

## IV.    CONCLUSION

The Court has already found, on a preliminary basis, that the settlement is fair, adequate, and reasonable. The Court should make that decision final and grant approval of the settlement in all respects and enter the Proposed Order of Judgment.

Dated: February 18, 2015                                            NICHOLS KASTER, LLP


By: s/Matthew C. Helland
    Matthew C. Helland

Attorneys for Plaintiffs and those
similarly situated